330 So.2d 268 (1976)
COMPLETE AUTO TRANSIT, INC.
v.
Charles R. BRADY, Jr., Chairman, Mississippi State Tax Commission.
No. 48590.
Supreme Court of Mississippi.
April 13, 1976.
Butler, Snow, O'Mara, Stevens & Cannada, Alan W. Perry, D. Carl Black, Jr., Jackson, for appellant.
Joe D. Gallaspy, William N. Lovelady, Jr., James H. Haddock, Jackson, for appellee.
Before GILLESPIE, C.J., and ROBERTSON, and LEE, JJ.
GILLESPIE, Chief Justice, for the Court:
This case involves an assessment for sales taxes imposed upon Complete Auto Transit, Inc., a Michigan corporation (hereinafter Taxpayer). Taxpayer paid the taxes and filed suit in the Chancery Court of Hinds County to recover the sum paid. From a decree upholding the validity of the assessment, Taxpayer appealed to this Court.
Taxpayer is engaged in the business of hauling motor vehicles for General Motors Corporation. It is a certificated contract carrier operating throughout the United States pursuant to authority of the Interstate Commerce Commission. The Mississippi activity of Taxpayer requires the maintenance of a yard adjacent to a railroad at Jackson where an office, together with facilities for servicing Taxpayer's trucks, is maintained. Taxpayer receives approximately 350 automobiles per day from General Motors Corporation with whom it has a contract which is renegotiated from time to time in order to assure Taxpayer a fair return.
The General Motors plant in Georgia assembles automobiles for delivery to dealers in Mississippi and surrounding areas in other states. A sticker is placed on each automobile when it leaves the assembly plant in Georgia showing the dealer to whom it is to be sold. The vehicles are then loaded on railroad cars with a bill of lading showing the consignee as General Motors, in care of Complete Auto Transit. The bill of lading also shows the name of the city to which each automobile is to be delivered but not the name of the dealer to whom it is to be sold. The automobiles are transported to Jackson, Mississippi, by railroad and are unloaded onto Taxpayer's yard adjacent to the railroad. The bill of lading is then stamped "Received by General Motors Corporation, Chevrolet Motor Division, by Complete Auto Transit, Inc." The vehicles are then inspected for damage, and Taxpayer prepares waybills showing *270 the shipper as General Motors Corporation, the description of the automobiles, and the names of the consignees (General Motors dealers in cities other than Jackson). As soon as practical, usually within twenty-four to forty-eight hours, the vehicles are loaded on Taxpayer's trucks and delivered to dealers at various points in and out of the State of Mississippi.
Taxpayer is paid on a contract basis, and ordinarily no bill is rendered by Taxpayer to General Motors Corporation. The entire transportation charge is collected by General Motors from the dealer who ultimately receives the vehicle. The charges paid by General Motors to Taxpayer for transportation of vehicles from Jackson, Mississippi, to various General Motors dealers within the state are readily separable from charges for transporting vehicles from Jackson beyond the borders of Mississippi. Likewise the transportation charges paid the railroad company are in no way connected to the charges paid by General Motors to Taxpayer.
The question is whether the gross income derived by Taxpayer from transporting automobiles from Jackson to other points in the State of Mississippi is taxable by the State.
The statute levying the tax is Mississippi Code Annotated section 27-65-13 (1972), which provides:
There is hereby levied and assessed, and shall be collected, privilege taxes for the privilege of engaging or continuing in business or doing business within this state to be determined by the application of rates against gross proceeds of sales or gross income or values, as the case may be, as provided in the following sections.
The following sections, referred to in the statute, supra, describe the businesses taxed as "truck or any other transportation business for the transportation of property for compensation ... between points within the state... ." The amount of the tax is five percent of the gross income.
The general rule is that a state may tax a local activity affecting or related to interstate commerce if the local activity is sufficiently separate from the out of state aspects of interstate commerce. Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948). However, such a tax is invalid if there exists the danger that it can impose cumulative burdens on interstate commerce not borne by local commerce. General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964). The local activity taxed must be one that does not lend itself to repeated exactions in other states. Memphis Natural Gas Co. v. Stone, supra.
The present case is controlled by cases arising in this State. Interstate Oil Pipe Line Co. v. Stone, 203 Miss. 715, 35 So.2d 73 (Miss. 1948), aff'd, 337 U.S. 662, 69 S.Ct. 1264, 93 L.Ed. 1613 (1949), involved the first leg of an interstate shipment. The tax was levied on the gross receipts from the operation of the oil piplines wholly within the State. Interstate operated pipelines which were used to transport oil from various fields in Mississippi to loading racks adjacent to railroads elsewhere in the State. From the racks, the oil was pumped into railroad tank cars for shipment outside the State. If no tank cars were available, the oil was stored in tanks near the loading racks for short durations until cars were available. When the oil was delivered to Interstate, it was accompanied by shipping orders from the producer or owner directing that the oil be transported to out-of-state destinations. There was no through bill of lading from the point of origin at the fields to the point of destination outside the State. Interstate was paid on a per barrel rate, specified in its tariff, for transporting the oil from the gathering point to the loading rack at the railroad. In upholding the validity of the tax, the Supreme Court of the *271 United States said in a plurality opinion that it would not pause to consider whether the business of operating the pipeline was in interstate commerce, for the State had the power to impose the tax involved. The Court said that the tax was not invalidated by the commerce clause of the Federal Constitution merely because it imposed a direct tax on the privilege of engaging in interstate commerce. The Court concluded as follows:
Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate against interstate commerce in favor of competing intrastate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax. The judgment is affirmed. 337 U.S. at 668, 69 S.Ct. at 1266, 93 L.Ed. at 1620-21.
A case involving the final leg of an interstate shipment is McKeigney v. Dunn Brothers, Inc., 224 Miss. 762, 80 So.2d 802 (1955), suggestion of error overruled, 81 So.2d 712 (1955), appeal dismissed sub nom. Dunn Brothers, Inc. v. Stone, 350 U.S. 878, 76 S.Ct. 139, 100 L.Ed. 775 (1955). In Dunn the tax was levied upon the activities of Dunn Brothers under the following state of facts. Tennessee Gas Transmission Company was engaged in constructing an interstate pipeline which crossed several states, including Mississippi. It purchased pipe for this purpose from California and had it delivered by common carriers to its right-of-way in Mississippi. To accomplish this, it had the railroad company deliver the pipe from the foundry in California to depots or rail heads in Mississippi as near to its right-of-way as was feasible. It engaged Dunn Brothers, a Texas corporation holding a certificate of public convenience and necessity for interstate commerce, to deliver the pipe by motor truck from the depots or rail heads in Mississippi to the rights-of-way of the transmission company. The transmission company, as consignor, shipped the pipe by railroad to itself as consignee to the various depots and rail heads in Mississippi. Bills of lading were issued accordingly. The transmission company paid the freight, and when the shipments arrived at the rail destination, an agent of the transmission company inspected and accepted the pipe. Dunn Brothers then took charge of the shipment, and with the transmission company as both consignor and consignee, unloaded the car and delivered it to the right-of-way, for which service the transmission company paid Dunn Brothers. Based on Interstate Oil Pipeline Co. v. Stone, supra, and other decisions of the United States Supreme Court, this Court held that the tax was validly levied.
More recently, this Court upheld a tax on the gross income derived from the operation of a television cable system where a percentage of the signals rebroadcast by the taxpayer were received from outside the State. Rhoden v. Goodling Enterprises, Inc., 295 So.2d 433 (Miss. 1974).
In Convoy Company v. Taylor, 53 Wash.2d 439, 334 P.2d 772 (1959), the Supreme Court of the State of Washington upheld a tax on an activity almost identical to that involved in the present case. In Convoy, the proof showed that Ford Motor Company, the shipper in that case, maintained control of the automobiles shipped so as to protect itself if the dealer became bankrupt or failed to pay for the units.
In the present case, General Motors maintains control of the vehicles, at least until they are shipped out by Taxpayer. The automobiles are consigned to General Motors at Jackson and are their property to do with as they see fit until they are ultimately transported by Taxpayer to the purchasing dealer.
*272 It will be noted that Taxpayer has a large operation in this State. It is dependent upon the State for police protection and other State services the same as other citizens. It should pay its fair share of taxes so long, but only so long, as the tax does not discriminate against interstate commerce, and there is no danger of interstate commerce being smothered by cumulative taxes of several states. There is no possibility of any other state duplicating the tax involved in this case.
For the reasons stated, we hold that the tax was valid and the decree of the trial court is affirmed.
AFFIRMED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.