**JET FLEET CORPORATION,**
Appellant,

v.

**DALLAS COUNTY APPRAISAL DISTRICT, Dallas County Appraisal Review Board, and Foy Mitchell, Chief Appraiser, Appellee.**

No. 05–88–00986–CV.

Court of Appeals of Texas,
Dallas.

June 21, 1989.

Jackson D. Wilson, Dallas, for appellant.

Peter G. Smith, Dallas, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

HOWELL, Justice.

Jet Fleet Corporation (Taxpayer) appeals a judgment denying it an interstate allocation of value for the charter jet aircraft portion of Jet Fleet's personal property [1] taxed in 1983, 1984, and 1985 by the Dallas County Appraisal District. After a trial de novo reviewing the administrative actions of the appellees, Dallas County Appraisal District, the Appraisal Review Board, and Chief Appraiser Foy Mitchell (collectively Taxing Authority), the trial court issued its findings of fact and conclusions of law denying the interstate allocation.

Taxpayer brings twenty points of error challenging the trial court's action. By points one through eight, Taxpayer claims that Taxing Authority's method of taxation is discriminatory and thus unconstitutional under the commerce and due process clauses of the federal constitution. U.S. CONST. art. I, § 8, cl. 3; U.S. CONST. amend. XIV, § 1. In points nine through nineteen, Taxpayer urges that the court erred in failing to find that Taxpayer's aircraft had acquired a taxable situs outside Texas. Lastly, Taxpayer maintains that the court's findings were contrary to the great weight and preponderance of the evidence because the court refused to grant an allocation in accordance with the parties' stipulation showing the percent of mileage flown out of state as compared with mileage flown in the state. We disagree with Taxpayer's contentions and affirm.

The United States Constitution confers no immunity from state taxation. *Washington Revenue Dep't v. Association of*

---

1. Taxpayer's personal property subject to taxation in 1983 consisted of three aircraft (two Falcon jet aircraft and one Lear jet aircraft); in 1984 and 1985 only two planes were subject to taxation (one Falcon jet and one Lear jet). Taxpayer does not dispute the appraised value of the property, but only disputes the denial of an interstate allocation.

*Washington Stevedoring Cos.*, 435 U.S. 734, 750, 98 S.Ct. 1388, 1399, 55 L.Ed.2d 682 (1978). However, a state's power to tax property within its borders is limited by the commerce and due process clauses of the Constitution. U.S. CONST. art. I, § 8, cl. 3; U.S. CONST. amend. XIV, § 1. A property tax will violate the commerce clause as an impermissible restraint on interstate commerce unless it is applied to an activity with a substantial nexus to the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977).

As a matter of due process, the state of domicile has jurisdiction to tax the personal property of its corporations unless some measurable portion of the property has acquired a permanent location or "taxable situs" elsewhere. *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 294, 64 S.Ct. 950, 951, 88 L.Ed. 1283 (1944). *See also Central R.R. Co. v. Pennsylvania*, 370 U.S. 607, 611–12, 82 S.Ct. 1297, 1301–02, 8 L.Ed.2d 720 (1962). The question of whether an instrumentality of commerce has acquired a tax situs in another state is purely a question of due process. *Braniff Airways, Inc. v. Nebraska State Bd. of Equalization & Assessment*, 347 U.S. 590, 599, 74 S.Ct. 757, 763, 98 L.Ed. 967 (1954). The test is whether the tax assessed bears a practical relation to the opportunities, benefits, and protection conferred or afforded by the taxing state. *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 174, 69 S.Ct. 432, 434, 93 L.Ed. 585 (1949).

In Texas, all tangible personal property in the state, whether owned by natural persons or corporations, shall be taxed in proportion to its value. TEX. CONST. art. VIII, § 1. Texas has jurisdiction to tax tangible personal property if the property is:

(1) located in this state for longer than a temporary period;

(2) temporarily located outside this state and the owner resides in this state; or

(3) used continually, whether regularly or irregularly, in this state.

TEX.TAX CODE ANN. § 11.01(c) (Vernon 1982).

The burden of proof rests on the taxpayer—who contends that a portion of its assets is beyond the state's taxing power—to show that the same property may be similarly taxed in another jurisdiction. *Central R.R.*, 370 U.S. at 613, 82 S.Ct. at 1302. Taxpayer must prove that a defined part of the domiciliary corpus has acquired a permanent location elsewhere. *Northwest Airlines*, 322 U.S. at 295, 64 S.Ct. at 952 (approved in *Braniff Airways*, 347 U.S. at 602, 74 S.Ct. at 764). A tax situs in a non-domiciliary state may be established with proof that the instrumentality travels through that state along fixed and regular routes. *Central R.R.*, 370 U.S. at 614, 82 S.Ct. at 1302. Alternatively, the non-domiciliary tax situs may be shown by habitual employment within that state of a substantial number of vehicles, albeit on irregular routes. *Id.* at 615, 82 S.Ct. at 1303. Our inquiry does not focus on the instrumentality's *absence* from the domiciliary state. Instead, we must decide whether the instrumentality could be taxed on the basis of sufficient contacts with the non-domiciliary state. *See id.* at 612, 82 S.Ct. at 1301; *see also Braniff Airways*, 347 U.S. at 600–01, 74 S.Ct. at 763–64. With a lack of sufficient contacts, we can presume that the domiciliary state is the only state affording the opportunities, benefits, or protection mandated by due process as a prerequisite to taxation. *See Central R.R.*, 370 U.S. at 612, 82 S.Ct. at 1301.

In the case at bar, the parties stipulated to an agreed statement of facts and submitted all legal and factual issues to the court. The parties stipulated that Taxpayer was domiciled in Dallas County, Texas in 1983, 1984, and 1985, and its principal place of business (including its principal office and terminal) was Love Field Airport in Dallas County. Taxpayer also had office and terminal space during the years in question in Shreveport, Louisiana, and Teterboro, New Jersey.

Taxpayer's aircraft were kept outside Texas not more than twenty percent of the time during those years. Although the aircraft were kept, maintained, and hangared outside the state at "various locations," Taxpayer failed to specify the duration or particular sites of such activities. More than fifty percent of the fuel for Taxpayer's aircraft was purchased in Texas, and eighty-one percent of the maintenance on the aircraft was performed in Texas. The aircraft were hangared in Dallas County when not in use.

Taxpayer received police and fire protection as well as other government services from Dallas County. In addition, Taxpayer paid rent and landing, fuel, and other fees into a Love Field revenue fund, for which Taxpayer received separate fire and police protection.

Taxpayer engaged in charter flights only. Taxpayer did not operate as a scheduled air carrier, and thus its flights were irregular and typically unscheduled. Attached to the stipulations was a list of all flights that originated and terminated outside Texas during the tax years in question. These lists, however, mentioned more than thirty states and did not specify how much time was spent at each destination. Taxpayer did submit in its stipulations a proposed interstate allocation in which it asserted that approximately sixty-five percent of its in-air mileage was logged outside Texas. The stipulations, however, fail to specify any particular state where this mileage accrued.

Further, the stipulations provided that Taxpayer's aircraft had never been rendered for taxation in another state. Taxes had never been assessed by or paid to a state other than Texas.

Based on these stipulated facts, the court found as a matter of law that the entire value of Taxpayer's charter jet aircraft fleet was taxable in Dallas County because the aircraft did not acquire a taxable situs in any other state during the tax years in question. The trial court held, as we have noted, that to acquire a tax situs in another state, Taxpayer had to show that it operated along fixed or regular routes or that

some ascertainable portion of Taxpayer's fleet was habitually present in a non-domiciliary state throughout the tax year.

■ With this background in mind, we turn to Taxpayer's points of error challenging the constitutionality of the Taxing Authority's actions. We cannot conclude that this tax scheme violated either the commerce clause or the due process clause of the federal constitution. First, the tax was applied to an activity with a substantial nexus to the taxing state. Taxpayer's charter air service was based in Texas with most of its operations emanating from Dallas County. *See Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079. Second, the tax does not discriminate against interstate commerce because it is fairly applied to *all* personal property (1) located in Texas for longer than a temporary period, (2) located out of Texas temporarily while its owner remains in the state, or (3) used continually, whether regularly or irregularly, in this state. TEX.TAX CODE ANN. § 11.01(c) (Vernon 1982); *see also Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079. Third, the tax is fairly related to the various governmental services, benefits, and protections Taxpayer received from the state. *See Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079.

■ The question of whether the tax was fairly apportioned—the remaining prong of the *Complete Auto* test—requires us to examine Taxpayer's contention that its aircraft acquired a taxable situs in another state. In order to receive the interstate allocation it sought, Taxpayer had the burden to prove that a defined part of its fleet acquired a permanent location elsewhere: either by traveling along fixed and regular routes or by habitual, albeit irregular, employment of the aircraft in another state. *Central R.R.,* 370 U.S. at 614–15, 82 S.Ct. at 1302–03. Taxpayer admitted in the agreed stipulations that it was not a scheduled air carrier and that its flights were typically unscheduled and irregular. The "fixed and regular routes" basis for tax apportionment is thus inapplicable. *See Braniff Airways,* 347 U.S. at 600–01, 74

S.Ct. at 763–64.[2] Therefore, the fleet could only acquire a tax situs in a non-domiciliary state through the latter alternative—habitual employment of a number of the aircraft in another state.

The stipulated facts submitted to the trial court regarding out-of-state flights provided no specifications as to (1) the amount of time the aircraft remained in non-domiciliary states, (2) the activities performed in those states, or (3) whether those states provided Taxpayer with any services, benefits, or protections. The Taxpayer failed to meet its burden of showing that a portion of its property became permanently situated in a state other than Texas. "Permanent" means "continuously throughout the year, not a fraction thereof, whether days or weeks." *Northwest Airlines*, 322 U.S. at 298, 64 S.Ct. at 953. The evidence fails to show that Taxpayer's aircraft had sufficient contacts with a non-domiciliary state to render it subject to taxation outside of Texas. *See Braniff Airways*, 347 U.S. at 600–01, 74 S.Ct. at 763–64. Consequently, because Taxpayer failed to establish that its property had acquired a taxable situs in a non-domiciliary state, apportionment of Taxpayer's tax liability was not required. Taxpayer faced no threat of multiple taxation that would violate the commerce clause of the federal constitution. *Central R.R.*, 370 U.S. at 612, 82 S.Ct. at 1301.

We conclude that the trial court did not err in finding that the entire value of Taxpayer's personal property was taxable in Dallas County, Texas. The Taxing Authority's actions did not violate either the commerce clause or the due process clause of the United States Constitution. We therefore overrule points one through eight. Further, the trial court did not err in concluding that Taxpayer's property did not acquire a taxable situs in a state other than Texas so as to require apportionment of the tax. We overrule points nine through nineteen.

■ By point of error twenty, Taxpayer asserts that the trial court erred in failing to render judgment for Taxpayer for the allocation amount stipulated by the parties. Taxpayer argues that the court's findings were contrary to the great weight and preponderance of the evidence. In reviewing a factual insufficiency point, we will consider all of the evidence in the record relevant to the fact being challenged. We may set aside the judgment only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). As we have previously discussed, Taxpayer failed to prove that a defined portion of its fleet acquired a taxable situs in a *particular* state other than Texas. *See Central R.R.*, 370 U.S. at 615, 82 S.Ct. at 1303. We cannot determine, on the record before us, whether Taxpayer's presence in any particular state was habitual or merely sporadic. *See id.* at 616, 82 S.Ct. at 1303. Consequently, under the applicable Texas Tax Code provision, section 11.01(c), we hold that Taxing Authority properly taxed the entire value of Taxpayer's aircraft rather than apportioning Taxpayer's tax liability with a non-domiciliary state. The trial court's findings, therefore, were not against the overwhelming weight of the evidence so as to be clearly wrong and unjust. We overrule Taxpayer's final point of error.

We AFFIRM the trial court's judgment.

---

**2.** Taxpayer argues that other Dallas air carriers, such as Southwest Airlines, regularly receive interstate allocations of their tax liability for the portion of time spent flying outside the state. Commercial airlines such as Southwest, however, generally fly along fixed and regular routes to other states, thereby establishing sufficient contacts with non-domiciliary states to create a need for tax apportionment. This fact distinguishes them from Taxpayer's business, which consists of specifically chartered, unscheduled, and irregular flights to other states. *See Braniff Airways*, 347 U.S. at 600–01, 74 S.Ct. at 763–64.