CRAWLEY, Judge,
concurring in the result.
The central issue in this case is whether Gulf Caribe has established a taxable situs in Puerto Rico so as to make the imposition of the full ad valorem tax assessed by the Mobile County Revenue Commissioner constitutionally impermissible under the Due Process Clause and the Commerce Clause of the United States Constitution. As the majority opinion correctly states, to establish a tax situs a taxpayer would have to put forth either: (1) proof that the instrumentality in question travels through that state along fixed and regular routes; or (2) proof of habitual employment within that state of a substantial number of the instrumentalities in question, albeit on irregular routes. Central R.R. v. Pennsylvania, 370 U.S. 607, 614-15, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962); see also Jet Fleet Corp. v. Dallas County Appraisal Dist., 773 S.W.2d 744, 746 (Tex.Ct.App.1989).
Gulf Caribe and the Revenue Commissioner agree that the only way for Gulf Caribe to establish a tax situs in Puerto Rico is by proving that the tugboat and the barge travel through Puerto Rico along fixed and regular routes; the second option, that of habitual employment of a substantial number of instrumentalities in Puerto Rico, is not available to Gulf Car-ibe, given the facts of this case. The Revenue Commissioner and Gulf Caribe differ in their opinions whether Gulf Car-ibe’s contact with Puerto Rico, approximately 18 stops in one year, each of 2 days average duration, are sufficient to meet the Central R.R. test.
The probate court,[4] as one basis for its judgment, determined that Gulf Caribe *258 failed to meet the Central R.R. test because Gulf Caribe had not shown that the tugboat and the barge traveled through Puerto Rico on scheduled and regular routes. The majority affirms the trial court’s judgment, holding that Gulf Caribe failed to establish a tax situs in Puerto Rico. Although I believe that the United States Supreme Court may one day develop a test addressing the situation posed by this case — how to apportion taxes on the instrumentalities of interstate commerce involved in commerce over the high seas— it has yet to do so.[5] Therefore, I, like the majority, am forced to conclude that Gulf Caribe failed to establish a tax situs in Puerto Rico; that is, it failed to meet the Central R.R. test because it failed to prove that the tugboat and the barge traveled through Puerto Rico on a “fixed and regular route.”

. The probate court also determined that the "home-port” doctrine applied. Although the United States Supreme Court has not clearly overruled the doctrine, it has questioned its continued viability. See Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 443, 99 *258 S.Ct. 1813, 60 L.Ed.2d 336 (1979). I believe that the Court will, when clearly presented the issue, overrule what it has already characterized as an ''anachronistic'' and quite possibly "abandoned” doctrine. Japan Line, 441 U.S. at 443, 99 S.Ct. 1813.

. The Central R.R. test, as it was written in response to questions concerning the apportionment of taxes on railroad cars involved in interstate travel, clearly states that the instrumentality in question must travel through the state on regular and fixed routes. Naturally, a railroad car must travel through a state and must travel on fixed and regular routes— railroad tracks. The application of the Central R.R. test to vessels traveling inland waterways poses no difficulty as inland waterways travel through a state and are clearly regular and fixed routes. Likewise, application of the test to air travel poses little difficulty. Application to cases involving trade over the high seas, however, where the oceangoing vessel travels to and from a port on the shores of a state, is much more difficult, because the oceangoing vessel, in many cases, would not traverse any inland waterways and, therefore, would not travel “through the state.”