# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 15-0687
═══════════════

ETC MARKETING, LTD., PETITIONER,

v.

HARRIS COUNTY APPRAISAL DISTRICT, RESPONDENT

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════

CHIEF JUSTICE HECHT, dissenting.

I agree with the Court that the natural gas sold by ETC Marketing, Ltd. (ETC) outside Texas begins its interstate journey at the Katy marketing hub, where it enters the pipeline operated by ETC's affiliate, Houston Pipe Line Co. (HPL). But I do not agree that temporary storage of the gas in HPL's Bammel reservoir in Harris County, incidental to the interstate shipment of the gas and essential to the pipeline's operation, subjects the gas to state taxation, prohibited by the dormant Commerce Clause on property in interstate commerce. The Court correctly states that "stoppage integral to the [interstate] journey itself is really no stoppage at all in the eyes of the Commerce Clause."[1] According to the United States Supreme Court, "[u]nderground gas storage facilities are a necessary and integral part of the operation of piping gas from the area of production to the area

---

[1] *Ante* at ___.

of consumption"[2]—in this case, from Texas to out-of-state markets. If stoppage integral to interstate transportation cannot be a basis for state taxation, and storage of gas is integral to transporting it interstate, that should end the matter. Gas storage is integral to interstate transportation *as a matter of fact*. To hold, as the Court does, that storage of gas to facilitate its interstate shipment is nothing more than a shipper's business choice directly contradicts not only the Supreme Court but, as I explain below, the Federal Energy Regulatory Commission (FERC), and most importantly, the laws of physics. I respectfully dissent.

I agree with the Court that in determining whether state taxation of interstate commerce violates the dormant Commerce Clause, we must do our best to follow the United States Supreme Court's four-part test in *Complete Auto Transit, Inc. v. Brady*[3] as well as the older in-transit test.[4] Here, the question is whether the storage of ETC's gas incidental to its interstate transit provides a substantial nexus to Texas to allow state taxation of the gas.[5]

HPL's pipeline system is located entirely in Texas but connects to several interstate pipelines. Before 2009, HPL and its marketing arm, HPL Gas Marketing, serviced intrastate customers. HPL's affiliate, ETC (both are wholly owned by the same parent entity), sold gas exclusively in the interstate market. HPL decided to change its business to ship to interstate customers. To do so, FERC

---

[2] *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 295 n.1 (1988) (quotation marks omitted).

[3] 430 U.S. 274, 279 (1977).

[4] *See Diamond Shamrock Ref. & Mktg. Co. v. Nueces Appraisal Dist.*, 876 S.W.2d 298, 302 (Tex. 1994).

[5] The concurring JUSTICES echo Justice Scalia's criticism of the Supreme Court's dormant Commerce Clause jurisprudence. *Ante* at ___. While I, too, share the concerns he voiced, an epithet-laced rebuke of that Court by Justices on this one is disrespectful.

2

required that HPL divest itself of its marketing operations. HPL Gas Marketing and ETC merged and began selling gas exclusively to customers outside Texas. HPL transports gas for ETC as well as other shippers.

ETC purchases gas at the Katy hub. The gas enters HPL's pipeline there and begins its interstate journey. Along the way it is commingled with gas from other shippers. Shippers still own the gas they send through the pipeline—but they own the volume, and not the actual molecules, that they delivered to the pipeline. A shipper is entitled to that volume of gas on delivery to customers corresponding to amounts supplied to the pipeline. HPL controls the gas in the pipeline.

HPL owns and operates the Bammel reservoir, a gas storage facility in Harris County. Before 2009, HPL had used the facility to store gas for local customers. When HPL shifted to interstate gas transmission, it used the Bammel reservoir for storage of gas moving through the pipeline. The stored gas is owned by ETC and other shippers. The demand for gas at the delivery end of its interstate journey is, of course, seasonal. In cold weather, more gas is used for heat; in warm weather, more is used to generate electricity to power air conditioning. While production of gas to supply the pipeline—from wells, gathering systems, and processing plants—can also fluctuate, the forces affecting supply are not the same as those affecting demand.

The amount of gas in the pipeline affects its pressure. If input exceeds output, the pressure increases; when output exceeds input, the pressure decreases. Gas transmission must operate between a range of pressures. That range cannot be maintained by managing supply and demand. When gas leaves the well, it must go somewhere. If it cannot be released for use or to a pipeline for transmission, the well valve must be turned off. Demand is influenced by weather, which cannot

3

reliably be predicted, let alone managed. When sudden cold weather increases demand, pipeline flow and pressure cannot be maintained by going through the oil patch and turning on more wells, any more than pipeline pressure can be decreased by turning wells off when a predicted cold snap fizzles.

Gas storage allows a pipeline transmission system to operate safely and efficiently, and to maintain a dependable supply for customers. HPL uses the Bammel facility, a depleted underground formation, to store gas for interstate transmission. The gas has been moving in interstate commerce as it is pumped into the reservoir, and it resumes that journey when it is pumped out. When demand is high, nothing is stored, and the gas moves directly to customers. When demand is low, gas may be stored for several months. Storage availability, used or not, is a necessary and integral part of gas transmission in interstate commerce. Gas storage facilities are located all along the pipelines from which ETC buys gas and the pipelines that carry the gas to the interstate customers to whom it sells.

Gas storage is, of course, to ETC's benefit, and for that reason, the Court concludes that storage is a business decision for ETC, a way for it to sell when demand and prices are higher and wait when they're lower. "If HPL did not store the gas," the Court says, "it would necessarily flow downstream only to find a complete lack of paying customers on the other end: a problematic (and business backwards) result for ETC indeed."[6] The statement betrays a profound lack of understanding of the laws of physics. If the gas pumped into HPL's pipeline cannot be stored or delivered, the line will explode. The only ways to adjust to the fluctuating demand is by

---

[6] *Ante* at ___.

correspondingly adjusting the supply, which cannot be done, or by using storage. Storage is integral to transportation.

The Court states that HPL's pipeline is not "overcrowded",[7] an inapt label by which I think the Court means that line pressure is not too high. But the reason that the line pressure remains acceptable is because storage is available. "Overcrowding" is *precisely* the problem when supply exceeds demand. The supply continues, demand falls, and the pressure increases. That is the problem that storage solves. The Court says: "ETC's gas does not resume transportation as soon as space becomes available; ETC orders transportation when the demand rises and it so decides the market conditions are most advantageous."[8] But those periods coincide; space becomes available (still an odd way of phrasing it) *when* market conditions are most advantageous. The increased demand requires added flow and pressure in the pipeline provided by the gas released from storage.

The Court states: "ETC's seasonal storage is not a prerequisite to safe, effective movement of the stored gas but instead clears the way for the pipeline to transport other gas."[9] This is simply wrong. The limitations on pipeline flow and pressure are not of ETC's making; they are due to the engineering and operation of the pipeline. ETC is not the only shipper whose gas must be stored. ETC does not store its gas so that HPL can transport gas for another shipper. When demand falls, all shippers are affected. "Succinctly," the Court summarizes, "ETC does not store gas to facilitate a continuous journey; ETC stores gas to avoid transportation for the time being—the antithesis of

---

[7] *Ante* at ___.

[8] *Ante* at ___.

[9] *Ante* at ___.

5

continuity."[10] Again, ETC is not the only shipper that stores gas; HPL must use storage for all shippers because the gas has nowhere else to go.

This is all a matter of physics, not ETC's or any other gas shipper's marketing strategy. It is why, as I noted at the outset, the United States Supreme Court has stated "[u]nderground gas storage facilities are a necessary and integral part of the operation of piping gas from the area of production to the area of consumption."[11] It is why FERC has echoed the Supreme Court: "underground storage of natural gas is critical in assuring that overall demands and specific requirements of natural gas customers are met."[12] It is why, according to FERC regulations, "[t]ransportation includes storage."[13] The Court dismisses this statement as not being "a proclamation on the transitory nature of all gas placed in storage."[14] But that is exactly what it is. It is an affirmation that gas storage is integral to gas transportation, not separate from it, and that gas transportation cannot happen without storage.

In *State of Minnesota v. Blasius*, the Supreme Court set forth this rule: "If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement."[15] That rule fits the present

---

[10] *Ante* at ___.

[11] *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 295 n.1 (1988).

[12] Rate Regulation of Certain Natural Gas Storage Facilities, Order No. 678, 71 Fed. Reg. 36612 (June 27, 2006).

[13] 18 C.F.R. § 284.1 (1992).

[14] *Ante* at ___.

[15] 290 U.S. 1, 9–10 (1933).

case perfectly. ETC's gas began its interstate movement at the Katy hub. The movement is sometimes interrupted at the Bammel storage facility due to the necessities of HPL's pipeline system operation, like those of any other similar system, and for safety and convenience. The interstate movement of ETC's gas through the Bammel reservoir must therefore be regarded as continuing.

The Supreme Court's decision in *Carson Petroleum Co. v. Vial*,[16] which the Court says "bears perhaps the closest resemblance to the current scenario",[17] is illustrative. In that case, oil purchased in Texas, Oklahoma, and Kansas was transported by railcar to the Port of New Orleans and stored there in tanks for transport in cargo ships to overseas customers.[18] Sometimes ships were in port waiting to be loaded with oil as it was delivered, and sometimes the oil was stored awaiting arrival of a ship.[19] The oil was not held in the tanks for any reason other than to accommodate its transfer from railcars to ships, or for any longer than necessary.[20] The Supreme Court held that the tank storage did not interrupt the interstate and foreign transportation of the oil.[21]

The Court offers two reasons to distinguish *Carson* from the present case. Neither is valid. One is that the oil transportation in *Carson* involved "disjointed, moving pieces",[22] while the gas

---

[16] 279 U.S. 95 (1929).

[17] *Ante* at ___.

[18] 279 U.S. at 99.

[19] Id. at 100.

[20] Id. at 101.

[21] Id. at 107–109.

[22] *Ante* at ___.

transportation here does not. ETC's gas flows through HPL's pipeline to interstate pipelines to the ultimate consumers. In essence, storage of property is integral to its transportation if above-ground but not if underground. One is tempted to think the Court is joking. What the transportation systems in *Carson* and this case share, almost identically, is that neither could operate without storage. The Court's second distinction is that the shipper had already arranged for the sale of the oil abroad before it arrived at the Port of New Orleans, while in this case, ETC's gas is stored at Bammel because it cannot be sold at that time for want of demand.[23] But the demand for ETC's gas—all of it—exists; the issue is simply the timing of delivery. In *Carson*, sometimes a ship waited on oil to arrive, sometimes oil waited on a ship to arrive. In this Court's view, the oil should have been subject to state taxation because the shipper did not wait to begin the rail transportation until the ship was in port. ETC can be taxed, the Court says, because it did not somehow time its gas purchases to meet its sales. But that cannot be a practice for ETC alone. To avoid state taxation of gas stored in interstate transit, all shippers would be required to do the same. Interstate gas pipelines cannot manage market fluctuations, maintain structural integrity and operational efficiency, and assure dependable delivery by adjusting supplies from gas producers.

The issue we decide today has been here before. In *Peoples Gas, Light, and Coke Co. v. Harrison Central Appraisal District*,[24] the court of appeals held that gas in storage under conditions almost identical to those in this case was not subject to state taxation.[25] The appraisal district

---

[23] Ante at __.

[24] 270 S.W.3d 208 (Tex. App.—Texarkana 2008, pet. denied).

[25] *Id.* at 219.

petitioned for review, and we ordered full briefing but eventually denied the petition.[26] In my view, *Peoples* was correctly decided.[27]

HPL made a business decision to shift from intrastate to interstate gas transportation, and ETC decided to use HPL's pipeline. The availability of the Bammel reservoir as an integral part of the transportation system made those decisions possible. Its use was not optional for either HPL or ETC. Under the Supreme Court's rule in *Blasius*, the interstate journey of ETC's gas, which began at the Katy hub, did not end during storage necessary to continue the journey to ETC's customer. If Harris County can tax ETC's gas while in storage, so can every other taxing authority with a storage facility in its jurisdiction along the interstate journey of the gas. The resulting burden on interstate commerce is exactly what the Commerce Clause prohibits.

I would reverse the judgment of the court of appeals and render judgment for ETC.

Nathan L. Hecht
Chief Justice

Opinion delivered: April 28, 2017

---

[26] 53 Tex. Sup. Ct. J. 389 (Mar. 12, 2010).

[27] The Court notes, but does not discuss, two cases that have held in similar situations that stored gas is subject to state taxation. *See In re Assessment of Pers. Prop. Taxes Against Mo. Gas Energy (Missouri Gas)*, 234 P.3d 938, 959 (Okla. 2008); *In re Appeals of Various Applicants From a Div. of Prop. Val. of Kan. (Kansas Gas)*, 313 P.3d 789, 799 (Kan. 2013). In my view, those cases were wrongly decided.