REQUESTED BY: Senator Jim Jensen Nebraska State Legislature
You have requested our opinion regarding the constitutionality of LB 136, in light of the United States Supreme Court decision in Quill Corp. v. North Dakota, ___ U.S. ___, 112 S. Ct. 1904 (1992) ["Quill"]. In Quill, the Court held that a North Dakota use tax collection statute requiring out-of-state mail-order sellers to collect and remit use tax on purchases made by resident consumers did not violate the "nexus" requirement of the due process clause of the Fourteenth Amendment of the U.S. Constitution. The Court held, however, that the use tax collection requirement violated the "nexus" requirement of the commerce clause of the U.S. Constitution (art. I, § 8, cl. 3). Your specific question is whether, consistent with the Court's decision in Quill, the state may, under LB 136, "constitutionally require reports of mail order businesses who have no physical presence in the state, in order to identify Nebraskans who owe Nebraska sales and use tax for the products purchased from such businesses."
For the reasons stated below, we conclude that, while the reporting requirements on retailers imposed under LB 136 are not contrary to the due process standards articulated in Quill, these requirements could be held to impose an undue burden on interstate commerce. Our analysis will address the provisions of LB 136, the Court's holding in Quill, and the application of the Court's decision to the reporting requirement proposed under LB 136.
I. LB 136.
LB 136 would amend the definition of "retailer" under Neb. Rev. Stat. § 77-2705 (1) (Cum. Supp. 1994) to allow the Tax Commissioner to "require retailers engaged in business in this state which have minimum contacts with this state, but do not have physical presence in this state, to submit periodic reports listing purchases by Nebraska residents, the amount of the purchases, and the locations to which the purchases were shipped." The reporting requirement would "not apply to out-of-state vendors or their representatives who have entered into an agreement with the Department of Revenue or obtained a permit for the collection of Nebraska sales and use taxes." Thus, LB 136 does not propose to impose an obligation on out-of-state sellers to collect and remit Nebraska use tax on purchases by Nebraska residents; rather, unless out-of-state sellers have entered into an agreement with the Department of Revenue or obtained a permit to collect Nebraska sales and use tax, it proposes instead to require out-of-state sellers engaged in business in Nebraska having "minimum contacts" with the state to report certain information to the Department of Revenue. This information, of course, is intended to assist the Department in its enforcement of Nebraska sales and use tax statutes.
II. The Quill Decision.
 Quill involved the constitutionality of a North Dakota use tax collection scheme requiring mail-order sellers who had no physical presence in the state to collect and remit use tax on sales to North Dakota residents. North Dakota initiated a declaratory judgment action against Quill, seeking a determination that it was liable for its failure to collect and remit use tax on sales to North Dakota consumers. Quill argued that North Dakota had no power to compel it to collect and remit use tax on sales to its North Dakota customers, contending that such requirement violated the Due Process and Commerce Clauses of the U.S. Constitution. 112 S. Ct. at 1907-09. Quill relied principally on the Court's prior decision in National Bellas Hessv. Dept. of Revenue, 386 U.S. 753 (1967) ["Bellas Hess"], in which the Court held that a state tax scheme which imposed the duty of collecting use tax on a seller whose only connection with consumers in the taxing state was by common carrier or U.S. mail violated both the Due Process and Commerce Clauses.
Reversing the North Dakota Supreme Court's decision that the statute was constitutional, the Court made two independent inquiries with regard to the Due Process and Commerce Clause issues. While the Court found that Quill's contacts with North Dakota were sufficient for due process purposes, it found these contacts insufficient to sustain the tax under the Commerce Clause. 112 S. Ct. at 1911, 1916.[1]
Addressing the due process issue, the Court stated that "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax" was required.Id. at 1909 (quoting Miller Bros. Co. v. Maryland, 347 U.S. 340,344-45 (1954). Recognizing that its due process jurisprudence had evolved beyond the point of requiring "physical presence" to allow a state to exercise jurisdiction over a defendant, the Court did not equate the "nexus" requirement for due process purposes with "physical presence." 112 S. Ct. at 1910, 1911. Rather, the Court determined that, consistent with due process, North Dakota could impose use tax collection responsibilities on Quill even though it maintained no "physical presence" in the state. Id. at 1911. The Court found that, as Quill purposefully directed its mail-order business at North Dakota residents, and the magnitude of these contacts created a "minimum connection" between the state and Quill, it was "fair" to require Quill to submit to the state's taxing jurisdiction. Id.
In contrast to the due process "nexus" requirement mandating only "minimum contacts", however, the Court concluded that the Commerce Clause required something more. The Court based this distinction on recognition of the different constitutional concerns underlying these two clauses. It reasoned that, while the due process clause is concerned with "the fundamental fairness of governmental activity", the commerce clause is focused on "structural concerns about the effects of state regulation on the national economy." Id. at 1913.
Relying on its decision in Complete Auto Transit v. Brady,430 U.S. 274 (1977), the Court stated that the Commerce Clause requires a "substantial nexus" between the taxing state and the out-of-state seller before the state can impose use tax collection duties on the seller. 112 S. Ct. at 1912. The Court defined "substantial nexus" as "physical presence" in the taxing state. Id. The Court stated that maintaining this "bright-line" rule, previously adopted in Bellas Hess, would promote the goals of the Commerce Clause. Id. at 1914. It believed the "physical presence" standard would "firmly establish[ ] the boundaries of legitimate state authority to impose a duty to collect sales and use taxes and reduce[ ] litigation concerning those taxes." Id.
at 1915. In addition, it found the "physical presence" standard would "encourage[ ] settled expectations by businesses and individuals." Id. (footnote omitted). Because Quill did not maintain a physical presence in North Dakota, the Court held that North Dakota's attempt to impose use tax collection responsibilities on its out-of-state mail order sales to its North Dakota customers violated the Commerce Clause. Id. at 1916.[2]
III. Analysis of Quill in Relation to LB 136.
In analyzing whether the provisions of LB 136 are consistent with the Court's decision in Quill, it is important, at the outset, to note the difference between the proposed amendment to § 77-2705 under LB 136, and the North Dakota statute found unconstitutional in Quill. The North Dakota law found unconstitutional in Quill concerned a state statute imposing use tax collection responsibility on an out-of-state company with no physical presence in the state on sales to state residents. LB 136, in contrast, does not impose a collection responsibility on retailers engaged in business in Nebraska, but having no physical presence in the state. Rather, it seeks to impose a reporting requirement on such retailers which have "minimum contacts" with the state, but no "physical presence".
The principal issues raised by your question, of course, require consideration of the due process and commerce clause concerns addressed in Quill. In considering these issues, you have provided for our review a comprehensive analysis of such questions in light of the Quill decision published by the Multistate Tax Commission. Davis, State Jurisdiction to CompelDocuments and Witnesses After Quill, (Multistate Tax Comm'n, Vol. 1994, No. 1) ["MTC Report"]. We have reviewed this analysis, which concludes that, under the Quill decision, "[r]easonable requests for potentially relevant documents to determine whether an out-of-state company is in compliance with the state tax laws, or to determine whether residents of the state are complying with use tax laws, should be upheld under both Due Process and Commerce Clause constitutional analyses." MTC Report at 27.
In the due process context, the MTC Report states:
 In deciding whether it may exert long-arm jurisdiction over an out-of-state company, a court must first ascertain whether the company has purposefully availed itself of the privilege of conducting activities within the state. Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Some specific, purposeful action is required, such as `designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.' Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112
(1987).
 Physical presence is not a prerequisite to jurisdiction. Burger King, supra, at 476. If only one sale is consummated, but that sale is the result of purposefully directed activities such as widespread catalog mailings to customers in the state, jurisdiction may lie for that one sale. Burger King, at 475, n. 18. If the company deliberately engages in `significant activities' within a state, jurisdiction will lie. Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984). If the company purposefully derives benefits from activities in other states, it can reasonably expect to be haled into the state courts. Kulko v. California Superior Court, 436 U.S. 84, 96 (1978).
MTC Report at 25-26.
The MTC Report notes that various activities may subject an out-of-state company to a state's authority to provide information such as that which may be required by LB 136, including advertising in the state through mail order catalogs, advertising through magazines or newspapers designed to reach state residents, or other "[s]ignificant ongoing in-state business transactions with customers, regardless of the absence of directed marketing." Id. at 25. If these "minimum contacts" with the state exist, as contemplated by LB 136, we do not believe that the bill would contravene federal due process requirements.
As to the Commerce Clause question, the MTC Report concludes that,
 [u]nlike its Due Process ruling, Quill's Commerce Clause physical presence ruling is very limited. The Court made it clear that the basis for its Commerce Clause decision was its reluctance to overturn National Bellas Hess, supra, and its belief that Commerce Clause issues such as the one presented are better regulated by Congress.
 Since Quill's application of the physical presence standard is limited to use tax collection from mail order companies, the decision arguably would not apply to state attempts to compel production of documents from out-of-state companies.
Id. at 26.
The MTC further states that, "[w]hen direct imposition of state taxes is not at issue, . . . it can be argued that the standard of Commerce Clause review to be applied should be that applied to any other state regulatory measure." Id. (emphasis in original). "In the non-tax context, the standard of Commerce Clause review is whether the state has a legitmate [legitimate] interest in the matter to be regulated and whether the burden imposed, and any discrimination against interstate commerce, is outweighed by the state's interest." Id. at 26-27 (citing Pike v. Bruce Church,Inc., 397 U.S. 137, 142 (1970)). In discussing application of the Commerce Clause "balancing test" applicable to a state law informational requirement such as imposed under LB 136, the MTC Report states:
 If the state's purpose is to seek information concerning customer compliance with the state tax laws, the out-of-state company is a third party to the tax investigation. The relevant information may include lists of customers, including addresses and information identifying the sales to the customers. . . . [P]roducing this information should impose a lesser burden on a company than use tax collection, in that the request is for information to be supplied after the fact — i.e., does not require application of a tax on each sale as it takes place and subsequent payments over to a state. The balance will . . . likely favor the state.
MTC Report at 27.
While the MTC Report's conclusion that the balancing test applied in Commerce Clause regulatory inquiries, weighing the burden imposed, and any discrimination against interstate commerce, against the state interest in the matter regulated, should favor state informational requirements imposed on out-of-state retailers such as proposed under LB 136, we cannot state with certainty that this conclusion is correct. It is true that the "bright-line" Commerce Clause rule adopted in Quill, requiring a "substantial nexus" which the Court equated with "physical presence" in the taxing state, was applied to a state statute requiring an out-of-state seller to collect and remit use tax, rather than an informational or reporting requirements imposed on out-of-state sellers. It may well be that the balancing test applied in Commerce Clause cases will be deemed to apply to state laws seeking to impose such informational requirements on out-of-state sellers in circumstances where the state does not seek to impose use tax collection duties on those sellers. Even if this standard were to apply, however, we are not confident that the burden imposed would be deemed insubstantial, and that it may not be found to place an undue burden on interstate commerce.
IV. Conclusion.
In conclusion, it is our opinion that the reporting requirements which may be imposed by the Tax Commissioner under LB 136 on retailers which do not have "physical presence" in the state, but have "minimum contacts" with the state, would not, if enacted, facially violate the Due Process Clause of the Federal Constitution under the principles articulated by the United States Supreme Court in Quill. We further conclude, however, that there remains a question as to whether such requirements would be found to place an impermissible burden on interstate commerce, in violation of the Commerce Clause. We also note that enactment of the reporting requirements proposed under LB 136 may pose significant, and potentially costly, enforcement problems, if out-of-state retailers do not voluntarily comply with efforts by the Department of Revenue to compel compliance with such requirements.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg 
Attorney General
[1] The Court overruled Bellas Hess on the due process issue, while affirming that case on the Commerce Clause issue.
[2] The Court thus affirmed Bellas Hess with respect to the Commerce Clause issue.