DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**AMERICAN BUSINESS USA CORP.,**
Appellant,

v.

**DEPARTMENT OF REVENUE,**
Appellee.

No. 4D13-1472

[November 12, 2014]

Appeal from the State of Florida, Department of Revenue; L.T. Case No. 2013-005FOF.

Michael D. Sloan, David B. Esau, and Dean A. Morande of Carlton Fields, P.A., West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Jeffrey M. Dikman, Senior Assistant Attorney General, and Angela L. Huston, Assistant Attorney General, Tallahassee, for appellee.

LEVINE, J.

The issue presented for our review is whether the State of Florida's tax on the internet sale of flowers, which are ordered by out-of-state customers for out-of-state delivery, violates the commerce clause of the United States Constitution. We find that Florida impermissibly burdened interstate commerce when it taxed out-of-state customers for out-of-state deliveries of out-of-state tangible goods. Because the flowers sold by the Florida-registered internet business were never stored in or brought into Florida, the imposition of taxes did not meet the "substantial nexus" test and thus violated the dormant commerce clause. As such, we reverse the order of the Florida Department of Revenue imposing a tax assessment on the sale of flowers to out-of-state customers for out-of-state delivery. As to the part of the order regarding the imposition of a tax assessment on the sales of prepaid calling arrangements, we affirm.

The Florida Department of Revenue ("the department") issued a proposed assessment on American Business USA Corp. ("the taxpayer") for

taxes and interest on the taxpayer's sales transactions between April 1, 2008, and March 31, 2011.  The taxpayer filed a timely protest and a final hearing was set in front of a Division of Administrative Hearings judge.

For the final hearing, the parties stipulated to the following facts:  The taxpayer is a Florida corporation doing business as "1Vende.com," in Wellington, Florida.  All of the company's sales were initiated online.  The taxpayer specialized in the sale of flowers, gift baskets, and other items of tangible personal property, as well as "prepaid calling arrangements."  The taxpayer "did not maintain any inventory of flowers, gift baskets and other items of tangible personal property."

The taxpayer would use "local florists to fill the orders it received for flowers, gift baskets and other items of tangible personal property."  The taxpayer "charged its customers sales tax on sales of flowers, gift baskets and other items of tangible personal property delivered in Florida." However, the taxpayer "did not charge its customers sales tax on sales of flowers, gift baskets and other items on tangible personal property delivered outside of Florida."  Finally, the taxpayer "did not charge its customers sales tax on the prepaid calling arrangements it sold."

The co-owners of the taxpayer, a husband and wife, both testified at the hearing.  The department offered no witnesses but offered several exhibits into evidence.  The department filed a proposed order which stated that the taxpayer was responsible for the sales tax when the business "receives an order pursuant to which [it] gives telegraphic instructions to a second florist located outside Florida for delivery of flowers to a point outside Florida," under Florida Administrative Code Rule 12A-1.047(2)(b). The department conceded that the business sold primarily to customers in Latin American markets.  The department tax auditor noted that "[t]he taxpayer's customers are throughout the world primarily to [sic] Spanish speaking countries."

The administrative law judge issued its recommended order to uphold the department's proposed assessment and made the following findings of fact.  There were two principal aspects of the taxpayer's business: (1) the sale of flowers, gift baskets, and tangible personal property, and (2) the sale of prepaid calling arrangements.  All of the taxpayer's sales were initiated online.  The taxpayer sold to customers throughout Latin America, Spain, and the United States, including Florida.  The taxpayer charged its customers sales tax on the sale of flowers, gift baskets, and other items of tangible personal property when the items were delivered within Florida.  The taxpayer did not charge its customers sales tax on the sales of flowers, gift baskets, and other items of tangible personal property

2

delivered outside of Florida.  Finally, the taxpayer did not charge sales tax on any of the prepaid calling arrangements it sold.

The administrative law judge upheld the department's assessment, finding that "[t]he taxpayer's sale of flowers, wreaths, bouquets, potted plants, and other such items of tangible personal property were subject to sales tax pursuant to section 212.05(1)(*l*) and rule 12A-1.047(1)."  The administrative law judge recommended to validate the department's proposed assessment.  The department accepted the recommendation by entering a final order.  An appeal of this final order ensues.

"Whether a lower tribunal had subject matter jurisdiction is a question of law which we review *de novo.*"  *Dep't of Revenue ex rel. Smith v. Selles*, 47 So. 3d 916, 918 (Fla. 1st DCA 2010).  "Lack of subject matter jurisdiction may be raised for the first time on appeal."  *Id.* (citation omitted).  Further, "judicial interpretation of statutes and determinations concerning the constitutionality of statutes are pure questions of law subject to the de novo standard of review."  *Abram v. Dep't of Health, Bd. of Med.*, 13 So. 3d 85, 88 (Fla. 4th DCA 2009) (citation omitted).  Since this case involves an administrative agency, issues of the constitutionality of the tax statute may be raised for the first time on appeal.  *See S. Alliance for Clean Energy v. Graham*, 113 So. 3d 742, 748 (Fla. 2013).

In upholding the assessment of the sales tax, the department relied on section 212.05(1)(*l*), Florida Statutes (2012), and Florida Administrative Code Rule 12A-1.047(1).  Section 212.05(1)(*l*) states:

> Florists located in this state are liable for sales tax on sales to retail customers regardless of where or by whom the items sold are to be delivered.  Florists located in this state are not liable for sales tax on payments received from other florists for items delivered to customers in this state.

Rule 12A-1.047(1), the administrative regulation that implements the florist tax, states that "[f]lorists are engaged in the business of selling tangible personal property at retail and their sales of flowers, wreaths, bouquets, potted plants and other such items of tangible personal property are taxable."

The taxpayer contests the imposition of taxes on out-of-state sales of flowers, gift baskets, and other tangible personal property.  The taxpayer claims that the imposition of taxes violates the due process clause of the Fourteenth Amendment and the dormant commerce clause emanating from Article 1, Section 8 of the United States Constitution.  For the same

reasons, the taxpayer also contests the imposition of taxes on the prepaid calling arrangements and disputes the department's determination that the taxpayer's books and records were inadequate and that the taxpayer did not retain statutorily mandated records of transactions.

We affirm that part of the department's order that assessed taxes for the calling arrangements, and we determine that the failure to maintain adequate records was sufficient grounds to affirm. We also find that the imposition of taxes did not violate the due process clause of the Fourteenth Amendment. We do find, however, that the imposition of taxes on out-of-state customers for out-of-state flower deliveries violates the dormant commerce clause, and we reverse that part of the tax assessment which emanates from the sale and delivery of flowers entirely outside Florida. We further find that the tax is unconstitutional as applied to the taxpayer's sales to out-of-state customers for out-of-state delivery.

At the beginning of the Republic, the Framers were acutely concerned with impermissibly burdening the commerce between the states. Hamilton famously wrote in Federalist No. 22 that

> [t]he interfering and unneighborly regulations of some States, contrary to the true spirit of the Union, have, in different instances, given just cause of umbrage and complaint to others, and it is to be feared that examples of this nature, if not restrained by a national control, would be multiplied and extended till they became not less serious sources of animosity and discord than injurious impediments to the intercourse between the different parts of the Confederacy.

The Federalist No. 22, at 140 (Alexander Hamilton) (Clinton Rossiter ed., 1999). Prior to the adoption of the Constitution, "[u]nder the Articles of Confederation, state taxes and duties hindered and suppressed interstate commerce; the Framers intended the Commerce Clause as a cure for these structural ills." *Quill Corp. v. N. Dakota*, 504 U.S. 298, 312 (1992).

Hamilton, in referring to the Articles of Confederation, was highlighting one of the glaring weaknesses of the governing structure during the times before the passage of the Constitution. Hamilton warned about interstate barriers on interstate commerce: "Though the genius of the people of this country might never permit this description to be strictly applicable to us, yet we may reasonably expect from the gradual conflicts of State regulations that the citizens of each would at length come to be considered and treated by the others in no better light than that of foreigners and aliens." The Federalist No. 22, at 140-41.

4

Madison, writing in a letter in 1829, stated that the commerce clause "grew out of the abuse of the power by the importing States in taxing the non-importing, and was intended as a negative and preventive provision against injustice among the states themselves, rather than as a power to be used for the positive purposes of the General Government, in which alone, however, the remedial power could be lodged." Letter from James Madison to Joseph C. Cabell, (Feb. 13, 1829).

To be sure, Article 1, Section 8, Clause 3 of the United States Constitution "says nothing about the protection of interstate commerce in the absence of any action by Congress. Nevertheless, as Justice Johnson suggested in his concurring opinion in *Gibbons v. Ogden*, 9 Wheat. 1, 231-232, 239, 6 L. Ed. 23 (1824), the Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well." *Quill*, 504 U.S. at 309. Thus, the dormant commerce clause has come to be understood as prohibiting "certain state actions that interfere with interstate commerce." *Id.*

"The Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State's power to tax out-of-state activities." *MeadWestvaco Corp. ex rel Mead Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 24 (2008). When it comes to evaluating a tax regarding its compliance with the commerce clause, the decisions of the United States Supreme Court

> have considered not the formal language of the tax statute but rather its practical effect, and have sustained a tax against Commerce Clause challenge when the tax is applied to an [1] activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). This has come to be known as the *Complete Auto* test. If the state tax fails any prong of the four-part test, then the tax violates the dormant commerce clause. Thus, if the taxing state is able to show only three of the four prongs under *Complete Auto*, the tax will not be sustained under a commerce clause challenge.

Among the taxes levied by states are the sales tax and the use tax. Sales tax is "any tax which includes within its scope all business sales of tangible personal property at either the retailing, wholesaling, or

manufacturing stage, with the exceptions noted in the taxing law." Jerome R. Hellerstein & Walter Hellerstein, State Taxation ¶ 12.01 (3d ed. 2014) (citation omitted). "Compensating use taxes are functionally equivalent to sales taxes. They are typically levied upon the use, storage, or other consumption in the state of tangible personal property that has not been subjected to a sales tax." *Id.* at ¶ 16.01[2]. "Because the use tax complements the sales tax, it generally applies only to the use of goods and, in some states, to services that have not already been subjected to sales tax. Consequently, the use tax applies principally to goods and services purchased outside the state." *Id.* (footnotes omitted).

Thus, "[g]enerally, the power of a state to collect sales taxes is limited to transactions occurring within that state, and states cannot collect a sales tax on purchases made outside the state, such as those made through mail orders." Geoffrey E. Weyl, *Quibbling with Quill: Are States Powerless in Enforcing Sales and Use Tax-Related Obligations on Out-of-State Retailers?*, 117 Penn St. L. Rev. 253, 257 (2012). The genesis of this prohibition can be traced in large measure to the commerce clause which

> precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State. In *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 775, 65 S. Ct. 1515, 1523, 89 L. Ed. 1915 (1945), the Court struck down on Commerce Clause grounds a state law where the "practical effect of such regulation is to control [conduct] beyond the boundaries of the state . . . .

*Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (plurality opinion). *See also Am. Oil Co. v. Neill*, 380 U.S. 451, 455 (1965) ("When passing on the constitutionality of a state taxing scheme it is firmly established that this Court concerns itself with the practical operation of the tax, that is, substance rather than form.").

In *National Bellas Hess, Inc. v. Department of Revenue*, 386 U.S. 753, 754 (1967), the Supreme Court considered the constitutionality of a use tax imposed on customers within the taxing state, where the only contact between the company and the in-state customers was "via the United States mail or common carrier." The Supreme Court found the use tax was in violation of the dormant commerce clause. It determined that the taxing state lacked the required "substantial nexus" to tax an out-of-state vendor, whose only contact to the taxing state was by U.S. mail or common carrier. The Supreme Court in *Bellas Hess*, decades before the advent of the internet, postulated that "it is difficult to conceive of commercial

transactions more exclusively interstate in character than the mail order transactions here involved." *Id.* at 759. Because *Bellas Hess* failed the first prong of the *Complete Auto* four-part test, the tax could not be sustained. The Supreme Court concluded that if the taxing state in *Bellas Hess* "can impose such burdens, so can every other State, and so, indeed, can every municipality, every school district, and every other political subdivision throughout the Nation with power to impose sales and use taxes." *Id.*

Like in *Bellas Hess*, the sales tax in the present case fails the first prong of the *Complete Auto* test. The instant case involves an in-state internet vendor selling to out-of-state customers for delivery of flowers out-of-state. The vendor's only connection to the taxing state is that it is registered as a corporation in Florida. The only interaction the out-of-state customer has with the taxing state is by shopping for flowers on a website operated by a company incorporated in Florida. The taxpayer does not maintain any inventory of flowers, gift baskets, or items of tangible personal property within Florida. These goods were not grown in, stored in, or delivered from Florida, and do not have any type of connection to Florida.

As we determine "by a case-by-case evaluation of the actual burdens imposed by particular regulations or taxes," we conclude that the taxes imposed here are an undue burden on interstate commerce, as there is not a "substantial nexus" between the activity of the taxpayer and the taxing state. *Quill*, 504 U.S. at 315. *Cf. Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 184 (1995) (finding Oklahoma's tax on a bus ticket for travel from Oklahoma to another state satisfied the first prong of the *Complete Auto* because "Oklahoma is where the ticket is purchased, and the service originates there. These facts are enough for concluding that '[t]here is "nexus" aplenty here.'"). Merely registering in a state does not give the taxing state the right to assess sales taxes on transactions without any other facts to constitute "substantial nexus." Further, the Court in *Bellas Hess* characterized mail order transactions as "exclusively interstate in character." 386 U.S. at 759. It follows then that the internet transactions at issue here are even more "exclusively interstate in character."

The department argues that other states have taxing schemes similar to this one. Of course, the many taxes, in their many variations, is one of the concerns previously expressed by the Supreme Court. "The many variations in rates of tax, in allowable exemptions, and in administrative and record-keeping requirements could entangle [the taxpayer's] interstate business in a virtual welter of complicated obligations to local jurisdictions." *Id.* at 759-60 (footnotes omitted). We recognize, within our

constitutional framework of federalism, that "Congress has the ultimate power to resolve" and "evaluate the burdens that use taxes impose on interstate commerce, [and] remains free to disagree with" the conclusions of the judiciary. *Quill*, 504 U.S. at 318.

Unlike the sale of flowers ordered by out-of-state customers with delivery at an out-of-state location, the prepaid calling arrangements have the required "substantial nexus" to the taxing state. *See Complete Auto*, 430 U.S. at 279. Taxes on prepaid calling arrangements are governed by section 212.05(1)(e), Florida Statutes (2012). In contrast with tangible personal property, prepaid calling arrangements are sold and delivered by the taxpayer through the internet. Delivery is effectuated by the taxpayer sending an authorization code directly to the customer via the internet. This makes the sale of prepaid calling arrangements unlike the sale of tangible personal property, such as flowers and gift baskets.

We also find that the imposition of taxes did not violate the due process clause of the Fourteenth Amendment. The standard for due process analysis under the Fourteenth Amendment, as adopted by the United States Supreme Court, is the same standard as announced in *International Shoe*, i.e., whether maintenance of the suit would offend "traditional notions of fair play and substantial justice." *Quill*, 504 U.S. at 307 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In this case, traditional notions of fair play and substantial justice were not offended because the taxpayer's company was registered in Florida and had a mailing address in Florida.

Thus, in *Quill*, the Supreme Court found that imposing tax on a vendor may violate the commerce clause but, at the same time, not violate the due process clause, where the vendor solicits business by catalogs and delivers merchandise within the taxing state by mail and common carrier. *Id.* at 305. That is because "the two, the Due Process clause and the Commerce Clause are analytically distinct." *Id.* "[A] corporation may have the 'minimum contacts' with a taxing State as required by the Due Process Clause, and yet lack the 'substantial nexus' with that State as required by the Commerce Clause." *Id.* at 313.

The Supreme Court in *Quill* further explained:

> Due process centrally concerns the fundamental fairness of governmental activity. . . . We have, therefore, often identified "notice" or "fair warning" as the analytic touchstone of due process nexus analysis. In contrast, the Commerce Clause and its nexus requirement are informed not so much

by concerns about fairness for the individual defendant as by structural concerns about the effects of state regulation on the national economy.

*Id.* at 312. The Supreme Court concluded that the "continuous and widespread solicitation of business" within the taxing state was enough to pass muster under a due process analysis. *Id.* at 308. At the same time, the Court found that the taxing state failed to demonstrate a "substantial nexus and a relationship between the tax and state-provided services" in order to "limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce." *Id.* at 313.

In summary, we find that assessment of sales taxes on the sale of flowers, gift baskets, and tangible personal property outside Florida, ordered by out-of-state customers for out-of-state delivery, violates the commerce clause of the United States Constitution. As such, we reverse and remand for further proceedings consistent with this opinion. We affirm the other aspects of the assessment as it relates to prepaid calling arrangements.

*Affirmed in part, reversed in part, and remanded.*

GERBER and KLINGENSMITH, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

9