# Supreme Court of Florida

_____

No. SC14-2404
_____

**FLORIDA DEPARTMENT OF REVENUE,**
Appellant,

vs.

**AMERICAN BUSINESS USA CORP.,**
Appellee.

[May 26, 2016]

LABARGA, C.J.

This case is before the Court for review of the decision of the Fourth District Court of Appeal in American Business USA Corp. v. Department of Revenue, 151 So. 3d 67 (Fla. 4th DCA 2014). Because the district court expressly declared invalid a state statute, section 212.05(1)(*l*), Florida Statutes (2012), this Court has jurisdiction to review the decision. See art. V, § 3(b)(1), Fla. Const. For the reasons we explain, we quash the decision of the Fourth District and hold section 212.05(1)(*l*) constitutional.

# FACTS AND PROCEDURAL HISTORY

This case commenced when the Florida Department of Revenue ("the Department") issued a proposed tax assessment on American Business USA Corp. ("American Business"), doing business as 1Vende.com in Wellington, Florida, for taxes and interest on the company's internet sales transactions between April 1, 2008, and March 31, 2011. American Business is a for-profit business incorporated in Florida and having its physical location and principal address in Florida. All the company's sales of flowers, gift baskets, and other items of tangible personal property were initiated online. The company did not maintain any inventory of these items but would use florists that were local to the location of the delivery to fill the order. The company charged its customers tax on flowers and other items delivered in Florida by local florists, but did not charge its customers sales tax on flowers and other items delivered outside of Florida.

The tax assessment was issued by the Department to American Business pursuant to section 212.05(1)(*l*), Florida Statutes (2012), which provides in pertinent part:

> Florists located in this state are liable for sales tax on sales to retail customers regardless of where or by whom the items are to be delivered. Florists located in this state are not liable for sales tax on payments received from other florists for items delivered to customers in this state.

Under Florida Administrative Code Rule 12A-1.047(1), "[f]lorists are engaged in the business of selling tangible personal property at retail and their sales of flowers, wreaths, bouquets, potted plants and other such items of tangible personal property are taxable."  The statute and rule were relied on by the Department in this case.

After American Business filed a timely protest, a hearing was set before the Division of Administrative Hearings.  The administrative law judge issued a pre-hearing order requiring the parties to stipulate to as many facts as possible.  Accordingly, the parties filed a joint pre-hearing stipulation setting forth pertinent stipulated facts.[1]  After the administrative hearing, at which the co-owners of the business testified and the Department offered exhibits, the administrative law judge issued an order recommending that the Department uphold the tax assessment.  The Department subsequently entered a final order adopting the administrative law

---

1. The parties stipulated as follows:  American Business USA Corp. is a Florida corporation doing business as 1Vende.com; American Business's principal place of business and mailing address is in Wellington, Florida; all of American Business's sales were initiated online; American Business specialized in the sale of flowers, gift baskets, and other items of tangible personal property; American Business did not maintain any inventory of flowers, gift baskets, and other items of tangible personal property; American Business used local florists to fill the orders it received for flowers, gift baskets, and other items of tangible personal property; American Business charged its customers sales tax on sales of flowers, gift baskets, and other items of tangible personal property delivered in Florida; American Business did not charge its customers sales tax on sales of flowers, gift baskets, and other items of tangible personal property delivered outside of Florida.

judge's recommended order in full. The order concluded that the tax required by section 212.05 is a tax on the privilege of engaging in business in Florida and is not a tax on the property sold. The order also noted that American Business "stipulated that it specializes in selling flowers and markets itself to the public as a company that sells flowers," rejecting the claim of American Business that, because of the manner in which it fills the orders, it is not a "florist" within the meaning of and subject to section 212.05(1)(*l*) or rule 12A-1.047.

American Business appealed the Department's final order to the Fourth District Court of Appeal where the company contended that the imposition of taxes on American Business for sales of flowers and other items of tangible personal property to be delivered out of state violated the due process clause of the Fourteenth Amendment and the "dormant Commerce Clause" emanating from article 1, section 8, of the United States Constitution.[2]

As to the challenge to section 212.05(1)(*l*) imposing a tax on florists, the Fourth District held that the imposition of taxes on sales to out-of-state customers

_____

2. "[T]he Constitution's express grant to Congress of the power 'to regulate Commerce . . . among the several states,' Art. I, § 8, cl. 3, contains a 'further negative command, known as the dormant Commerce Clause,' . . . . This negative command prevents a State from 'jeopardizing the welfare of the Nation as a whole' by 'plac[ing] burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear.' " Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n, 545 U.S. 429, 433 (2005) (citations omitted).

- 4 -

for out-of-state flower and gift deliveries violates the dormant Commerce Clause; and that the tax is thus "unconstitutional as applied to [American Business's] sales to out-of-state customers for out-of-state delivery." Am. Bus. USA, 151 So. 3d at 70. In so holding, the Fourth District recognized the factors necessary to evaluate whether a tax complies with the commerce clause:

> "The Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State's power to tax out-of-state activities." MeadWestvaco Corp. ex rel. Mead Corp. v. Ill. Dep't of Revenue, 553 U.S. 16, 24 (2008). When it comes to evaluating a tax regarding its compliance with the commerce clause, the decisions of the United States Supreme Court
>
>> have considered not the formal language of the tax statute but rather its practical effect, and have sustained a tax against Commerce Clause challenge when the tax is applied to an [1] activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.
>
> Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977). This has come to be known as the Complete Auto test. If the state tax fails any prong of the four-part test, then the tax violates the dormant commerce clause. Thus, if the taxing state is able to show only three of the four prongs under Complete Auto, the tax will not be sustained under a commerce clause challenge.

Am. Bus. USA, 151 So. 3d at 71. After applying the Complete Auto test to the facts of the case, and concluding the tax at issue here was an undue burden on interstate commerce, the district court stated, "Merely registering in a state does not give the taxing state the right to assess sales taxes on transactions without any other facts to constitute 'substantial nexus.' " Am. Bus. USA, 151 So. 3d at 73.

- 5 -

As to the Due Process Clause claim, the Fourth District, relying on the United States Supreme Court decision in Quill Corp. v. North Dakota, 504 U.S. 298 (1992), noted that a tax on a vendor may violate the Commerce Clause but not the Due Process Clause

> because "the two, the Due Process clause and the Commerce Clause are analytically distinct." [Quill Corp., 504 U.S. at 305]. "[A] corporation may have the 'minimum contacts' with a taxing State as required by the Due Process Clause, and yet lack the 'substantial nexus' with that State as required by the Commerce Clause."

Am. Bus. USA, 151 So. 3d at 74 (quoting Quill Corp., 504 U.S. at 313). In finding that due process was not violated in this case because minimum contacts were present, the Fourth District explained that "traditional notions of fair play and substantial justice were not offended because the taxpayer's company was registered in Florida and had a mailing address in Florida." Id. at 73. In distinguishing claims under the Commerce Clause from Due Process claims, the Fourth District noted that "the Commerce Clause and its nexus requirement are informed not so much by concerns about fairness for the individual defendant as by structural concerns about the effects of state regulation on the national economy." Id. at 74 (quoting Quill Corp., 504 U.S. at 312).

In sum, the Fourth District concluded that American Business had minimum contacts with the State of Florida such that no due process violation occurred, but that the business activities lacked a "substantial nexus" to Florida to allow tax on

sales involving out-of-state customers and out-of-state delivery of flowers, gift baskets, and tangible property that were never located in Florida. For the reasons discussed below, we disagree that the tax on American Business violates the dormant Commerce Clause.

**ANALYSIS**

The issue before this Court is whether section 212.05(1)(*l*), Florida Statutes, is unconstitutional as applied to certain activities of American Business. The constitutionality of a state statute is a pure question of law subject to de novo review. City of Miami v. McGrath, 824 So. 2d 143, 146 (Fla. 2002). This applies to a review of the constitutionality of a tax statute. See Fla. Dep't of Revenue v. New Sea Escape Cruises, Ltd., 894 So. 2d 954, 957 (Fla. 2005) ("[T]he interpretation of . . . [a] tax statute . . . [is] subject to a de novo standard of review."). In this case, American Business brought a challenge to section 212.05(1)(*l*), which, because it is an as-applied challenge, involves both a determination of law and a determination of the facts to which the law will be applied. "[M]ixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue." Davis v. State, 142 So. 3d 867, 871 (Fla. 2014) (quoting Henry v. State, 134 So. 3d 938, 946 (Fla. 2014)).

However, where, as here, "the facts are not in dispute, the only issue before the court is a reconciliation of the statutory provisions on which the parties respectively rely . . . . [and the] standard of review is de novo." Boca Airport, Inc. v. Fla. Dept. of Revenue, 56 So. 3d 140, 141-42 (Fla. 4th DCA 2011). Because the issue in this case is whether the tax statute is unconstitutional as applied to American Business, and because the operative facts are stipulated by the parties, the review by this Court remains de novo.

As in all constitutional challenges, the statute comes to this Court clothed with the presumption of correctness and all reasonable doubts about the statute's validity are to be resolved in favor of constitutionality. "While we review decisions striking state statutes de novo, we are obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible." Crist v. Ervin, 56 So. 3d 745, 747 (Fla. 2010) (quoting Fla. Dep't of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005) (quoting Fla. Dep't of Revenue v. Howard, 916 So. 2d 640, 642 (Fla. 2005))). With these standards in mind, we turn to the statute at issue.

Section 212.05, Florida Statutes (2012), provides in pertinent part that "every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, including the business of making mail order sales, . . ." The statute further provides that "[f]or the exercise

of such privilege, <u>a tax is levied on each taxable transaction or incident</u>."
§ 212.05(1), Fla. Stat. (2012) (emphasis added). Thus, the administrative law judge and the Department are correct that the statute does not place a tax on the items sold, but on the sales transaction itself. Subsection (1)(*l*) then makes clear that "[f]lorists located in this state are liable for sales tax on sales to retail customers regardless of where or by whom the items are to be delivered."
§ 212.05(1)(*l*), Fla. Stat. (2012) We turn first to the issue of whether section 212.05(1)(*l*) violates the dormant Commerce Clause as applied to American Business's internet sales of flowers, gift baskets, and other tangible personal property.

**The Dormant Commerce Clause**

The relevant inquiry into a claim of violation of the dormant Commerce Clause begins with the <u>Complete Auto</u> test. In <u>Complete Auto</u>, the United States Supreme Court addressed " 'the perennial problem of the validity of a state tax for the privilege of carrying on within a state, certain activities' related to a corporation's operation of an interstate business." 430 U.S. at 274 (quoting <u>Colonial Pipeline Co. v. Traigle</u>, 421 U.S. 100, 101 (1975)). The Mississippi tax was to be levied on gross sales of any business within the state, and the law required that anyone liable for the tax is required to add it to the gross sales price and collect it at the time the sales price is collected. <u>Id.</u> at 276. The Supreme

Court upheld the tax, which was imposed on a motor carrier transporting vehicles manufactured outside the state and shipped into the state by a company that did business within the state. The basis for affirmance announced in Complete Auto is the four-prong test that has come to be applied to determine if a taxing statute violates the dormant Commerce Clause. The Supreme Court in Complete Auto upheld that tax because no claim or showing was "made that the activity is not sufficiently connected to the State to justify a tax, or that the tax is not fairly related to benefits provided the taxpayer, or that the tax discriminates against interstate commerce, or that the tax is not fairly apportioned." Id. at 287.

The Supreme Court in Oklahoma Tax Commission v. Jefferson Lines, Inc., 514 U.S. 175 (1995), later explained that the Court has "often applied, and somewhat refined, what has come to be known as Complete Auto's four-part test." Jefferson Lines, 514 U.S. at 183. As noted above, the Court explained the test as requiring in its first prong that "a sale of tangible goods has a sufficient nexus to the State in which the sale is consummated to be treated as a local transaction taxable by that State." Id. at 184.

The second prong of the Complete Auto test, as interpreted in Jefferson Lines, looks at whether the tax is properly apportioned to ensure that each state taxes only its fair share of an interstate transaction. Jefferson Lines, 514 U.S. at 184. The Court explained that "[f]or over a decade now, we have assessed any

threat of malapportionment by asking whether the tax is 'internally consistent' and, if so, whether it is 'externally consistent' as well." Id. at 185 (quoting Goldberg v. Sweet, 488 U.S. 252, 261 (1989)). The first component of prong two, internal consistency, "is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." Id. The Supreme Court in Jefferson Lines concluded that the tax at issue was internally consistent because "[i]f every State were to impose a tax identical to Oklahoma's, that is, a tax on ticket sales within the State for travel originating there, no sale would be subject to more than one State's tax." Id. The second component of prong two is external consistency, which looks "to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." Id. "[T]he threat of real multiple taxation (though not by literally identical statutes) may indicate a State's impermissible overreaching." Id.

The third prong of the Complete Auto test, whether the tax discriminates against interstate commerce, looks at whether the tax provides a direct commercial advantage to local business. Jefferson Lines, 514 U.S. at 197. As the Supreme Court in Jefferson Lines noted, such a discriminatory advantage was found in American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S. 266, 285-86 (1987), where

the tax imposed a cost per mile on trucks operated by an interstate motor carrier that was five times as heavy as the cost per mile borne by local trucks.  Jefferson Lines, 514 U.S. at 197 (citing Am. Trucking, 483 U.S. at 269).

Finally, the fourth prong of the Complete Auto test looks at whether the tax is fairly related to the services provided by the State.  Id.  The Supreme Court in Jefferson Lines explained that "the Commerce Clause demands a fair relation between a tax and the benefits conferred upon the taxpayer by the State."  Id. at 199.  However, "[t]he fair relation prong of Complete Auto requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity."  Id.  The Court further noted that "police and fire protection, along with the usual and usually forgotten advantages conferred by the State's maintenance of a civilized society, are justifications enough for the imposition of the tax."  514 U.S. at 200 (citing Goldberg, 488 U.S. at 267).  The test "asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the State."  Id. at 200.

The Department of Revenue in this case contends that only prong one of the Complete Auto test—substantial nexus—is at issue because prongs two through four were not contested by American Business.  Even though American Business

does not dispute that contention, we review whether all four prongs of the test have been met, and discuss each in turn.

### (1) There must be a "substantial nexus" with the State.

The facts establish that American Business had more than a slight presence in Florida. Its economic activities and transactions transpired from its principal place of business in Florida, in taking internet orders for flowers, gift baskets, and other tangible personal property and arranging for those items to be located and delivered out of state. The Supreme Court in National Bellas Hess, Inc. v. Department of Revenue, 386 U.S. 753 (1967), held that the use tax in that case violated the dormant Commerce Clause because the taxing state lacked the required nexus to tax an out-of-state vendor under these circumstances. That case presented the question of taxation on an out-of-state seller whose only connection with customers in the taxing state was by common carrier or mail. Bellas Hess owned no tangible property in the taxing state, and had no representatives or solicitors there. Orders were sent to a plant outside the taxing state. In holding taxation was improper in that case, the Supreme Court in Bellas Hess distinguished between sellers with retail outlets, solicitors, or property in the taxing state. Id. at 758. Ten years later, in National Geographic Society v. California Board of Equalization, 430 U.S. 551 (1977), the Supreme Court affirmed the continuing vitality of Bellas Hess's "sharp distinction . . . between mail order sellers with

- 13 -

retail outlets, solicitors, or property within [the taxing] State, and those [like Bellas Hess] who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business." Nat'l Geographic Soc'y, 430 U.S. at 559 (quoting Bellas Hess, 386 U.S. at 758). In 1992, the Supreme Court reaffirmed the Bellas Hess distinction, for purposes of the Commerce Clause, between businesses that have a physical presence in the state and those whose only contacts with the state are by mail or common carrier. See Quill Corp., 504 U.S. at 314. American Business falls into the first category, having a business location, business property, and business activities in Florida.

This Court has applied the principle set forth in National Geographic, and the distinction discussed there concerning companies that only make sales in a state by mail or common carrier and have no physical presence in the state. In Department of Revenue v. Share International, Inc., 676 So. 2d 1362 (Fla. 1996), we held that a "slight[] presence" of a company in Florida by way of attending a chiropractic seminar for several days each year would be an insufficient nexus to enforce a use tax against the company that sold products by direct mail order to residents in Florida. The Court cautioned, however, that "[i]f such a company has additional connections to the taxing state, then those connections must be analyzed under the 'substantial nexus' test." Id. at 1363 (emphasis omitted). This Court reaffirmed the principle "that out-of-state mail order sales companies . . . which

have no physical presence in the taxing state, are immune from state sales or use tax liability." Dep't of Banking & Fin., State of Fla. v. Credicorp, Inc., 684 So. 2d 746, 751 (Fla. 1996) (citing Quill Corp., Nat'l Bellas Hess, and Share Int'l).

Thus, the law is established that without any physical presence in Florida, the sales tax imposed on American Business in this case for its out-of-state sales to out-of-state customers would clearly be in violation of the dormant Commerce Clause. However, the record shows that American Business does have a physical presence in Florida—it is headquartered in Wellington, Florida, and has been doing business in Florida since 2001. From its Florida location, American Business accepts internet orders and arranges for delivery of out-of-state flowers and tangible personal property. Based on the facts of this case, we find that the "substantial nexus" test is met. We turn next to the second prong of the Complete Auto test.

**(2)  The tax must be fairly apportioned.**

The internal consistency test, one component of prong two of the Complete Auto test, helps courts identify tax schemes that, in operation and application, would discriminate against interstate commerce. The test "looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." Comptroller of the Treasury of Md. v. Wynne, 135 S. Ct. 1787, 1802

- 15 -

(2015) (quoting <u>Jefferson Lines</u>, 514 U.S. at 185). "By hypothetically assuming that every State has the same tax structure, the internal consistency test allows courts to isolate the effect of a defendant State's tax scheme." <u>Id.</u> "[T]ax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States" are "typically unconstitutional." <u>Id.</u> "[T]ax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes" are not typically unconstitutional.[3] <u>Id.</u>

In the present case, if all states taxed only the entity initially receiving the order for flowers, and not the florist to whom the flower order and delivery is referred, then no florist would be taxed twice. <u>Jefferson Lines</u> also explained that a "failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." 514 U.S. at 185. But, "[i]f every state were to impose [an identical tax] . . . no sale would be subject to

_____

3. However, the Supreme Court also noted, "Our cases have held that tax schemes may be invalid under the dormant Commerce Clause even absent a showing of actual double taxation." <u>Wynne</u>, 135 S. Ct. at 1802 n.5.

- 16 -

more than one State's tax." Id.  That principle applies equally to the tax at issue in this case.[4]

We are also mindful of the principle discussed in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970), that "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive." Id. at 142.  Thus, the Supreme Court has allowed some incidental effect on interstate commerce if the statute generally operates in an even-handed and non-discriminatory manner and the state is not attempting to take

---

4. The tax, if enacted by all states in substantially the same form as Florida's, would not present a serious risk of multiple taxation.  Amici cite the rare case where an out-of-state florist may travel into Florida to deliver the flower order it received in its home state and is determined under the statute to also be a florist "located in" Florida; or where a florist that has an out-of-state branch and a Florida branch, and is a registered dealer in both states, refers its out-of-state order to its Florida branch.  We do not consider arguments raised by amici curiae that were not raised by the parties.  See, e.g., Riechmann v. State, 966 So. 2d 298, 304 n.8 (Fla. 2007).  Even if we consider such argument, instances of possible multiple taxation due only to the specific business model of certain businesses, which may subject those businesses to multiple taxation in rare circumstances, do not demonstrate that the Florida tax is placing interstate commerce at the mercy of states that might impose the same tax; and these examples do not show that Florida is attempting to garner more than its fair share of taxes.  Moreover, the facts upon which the as-applied challenge operates do not fall into either of the two examples of possible multiple taxation cited by the amici.

- 17 -

more than its fair share of taxes. We conclude the same can be said of the tax at issue in this case.

As to the second component of prong two—external consistency—the Supreme Court explained in <u>Jefferson Lines</u> that "[e]xternal consistency . . . looks not to the logical consequences of cloning [the statute], but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." 514 U.S. at 185.

American Business contends in this case—albeit in its argument concerning prong one of the <u>Complete Auto</u> test and not prong two—that it is being taxed on out-of-state sales that are not consummated until delivery is effected out of state, thus the Florida tax should not apply. The Department responds that it is the <u>transaction</u> occurring in Florida that is being taxed in Florida, and that the transaction occurs in Florida where the business facilitated every stage of the transaction from advertising for customers, accepting their orders, receiving payment, and locating and transmitting the orders to third-party florists. We agree with the Department that because the statute taxes the transaction that occurs in Florida by the business engaging in business here, and not on the items sold or the activities occurring out of state, prong two of the <u>Complete Auto</u> test is met.

### (3) The tax must not discriminate against interstate commerce.

The Supreme Court in <u>Jefferson Lines</u> described a tax that discriminates against interstate commerce as one that provides a direct commercial advantage to local business. 514 U.S. at 197. "States are barred from discriminating against foreign enterprises competing with local businesses . . . and from discriminating against commercial activity occurring outside the taxing State." <u>Id.</u> (internal citations omitted). Section 212.05(1)(*l*), Florida Statutes, contains no provision that affords preferential treatment or any commercial advantage to a Florida business over an out-of-state business. It simply requires that florists located in Florida are liable for sales taxes on sales transactions regardless of where or by whom the items are to be delivered. The statute exempts from the tax florists located in Florida that receive payments from other florists for items delivered to customers in this state. Thus, where a Florida florist receives an order and payment from another florist for delivery of flowers to customers in Florida, the Florida "delivering" florist will not pay the tax; and, if the other state has a statute similar to Florida's, the "referring" florist in that other state will be the one that is liable to remit the tax in that state if similar tax provisions apply. Similarly, where a Florida florist such as American Business sends an order for flowers or other items to an out-of-state florist to be delivered out of state, then the Florida florist is responsible for collecting and remitting the sales tax to the State of Florida.

- 19 -

Therefore, the statute does not discriminate against interstate commerce or provide a direct commercial advantage to local business. Finally, we examine prong four of the Complete Auto test.

**(4) The tax must be fairly related to the services provided by the state.**

The Department of Revenue contends that the tax in this case is fairly related to the services provided by the State because American Business, like other Florida residents or businesses, benefits from the state's resources and services. This inquiry is closely connected to the nexus prong and serves to ensure that a state's tax burden is not placed on persons who do not benefit from services provided by the State. See Quill Corp., 504 U.S. at 313 ("The first and fourth prongs, which require a substantial nexus and a relationship between the tax and state-provided services, limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce."). As noted earlier, the Supreme Court in Jefferson Lines explained that "the Commerce Clause demands a fair relation between a tax and the benefits conferred upon the taxpayer by the State," but "[t]he fair relation prong of Complete Auto requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity." 514 U.S. at 199. Also as we noted earlier, and as the Supreme Court explained in Jefferson Lines, "police and fire protection, along with the usual and

usually forgotten advantages conferred by the State's maintenance of a civilized society, are justifications enough for the imposition of the tax." Id. at 200 (citing Goldberg, 488 U.S. at 267). The test "asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the State." Id. "[T]he constitutional power of a state to tax does not depend upon the enjoyment of the taxpayer of any special benefit from the use of the funds raised by taxation." Delta Air Lines, Inc. v. Dep't of Revenue, 455 So. 2d 317, 323 (Fla. 1984). The "practical operation" of the tax allows the State of Florida to exert powers relative to "opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society." Id. (quoting Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444 (1940)).

American Business is physically located in Wellington, Florida, and operates its business from that location. It benefits from the public safety agencies of the state, as well as other infrastructure and public amenities paid for by state taxes. It benefits from the orderly, civilized society that is afforded it by the State of Florida. American Business has by its presence and transactions in Florida availed itself of the opportunities and protections made possible in part by the taxes imposed on its sales transactions. Thus, there is a reasonable relationship between the company's presence and activities in the state and the tax at issue.

For all the foregoing reasons, we find that all four prongs of the <u>Complete Auto</u> test have been satisfied and section 212.05(1)(*l*) does not violate the dormant Commerce Clause.

## Due Process Claim

American Business also claims that the tax at issue is a violation of the Due Process Clause of the United States Constitution. The district court found no violation of due process and we agree. Due process requires only that there be some minimal connection between the State and the transaction it seeks to tax. The Supreme Court in <u>Quill Corp.</u>, citing <u>Bellas Hess</u>, essentially found that "some sort of physical presence within the State" is sufficient, and necessary, for jurisdiction under the Due Process Clause. <u>Quill Corp.</u>, 504 U.S. at 307.

In the present case, American Business has a physical presence and does business within the state. We have concluded that American Business's activities have a substantial nexus to Florida. Thus, the minimum connection required to satisfy due process is also met. No due process violation is present on the facts of this case.

## CONCLUSION

Based on the foregoing analysis, we quash the decision of the Fourth District Court of Appeal in <u>American Business USA Corp. v. Department of Revenue</u> to the extent that it holds that the assessment of sales tax on sales of flowers, gift

baskets, and other items of tangible personal property ordered by out-of-state customers for out-of-state delivery violates the dormant Commerce Clause of the United States Constitution.

It is so ordered.

PARIENTE, QUINCE, and PERRY, JJ., concur.
LEWIS, CANADY, and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

Fourth District - Case No. 4D13-1472

(Broward County)

Pamela Jo Bondi, Attorney General, Jeffrey M. Dikman, Senior Assistant Attorney General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

for Appellant

Michael David Sloan, David Bedford Esau, and Dean Angelo Morande of Carlton Fields Jorden Burt, P.A., West Palm Beach, Florida,

for Appellee

James H. Sutton, Jr. of Moffa, Gainor, & Sutton, PA, Tampa, Florida, and Sydney S. Traum of the Law Offices of Sydney S. Traum, P.A., Miami Beach, Florida,

for Amici Curiae American Association of Attorney – Certified Public Accountants, Inc. and Florida Association of Attorney – Certified Public Accountants, Inc.