*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

APEX LABORATORIES INTERNATIONAL
INC.,

        Petitioner-Appellee,

v

CITY OF DETROIT,

        Respondent-Appellant.

FOR PUBLICATION
January 2, 2020
9:00 a.m.

No.  338218
Tax Tribunal
LC No.  16-000724-TT

ON REMAND

Before:  SERVITTO, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J.

In our previous opinion, this Court affirmed the Michigan Tax Tribunal's (the Tribunal) order granting petitioner Apex Laboratories International, Inc's (Apex) motion for summary disposition and denying respondent City of Detroit's (Detroit) motion for summary disposition.[1] Detroit applied to our Supreme Court for leave to appeal the May 17, 2018 decision of this Court.  In lieu of granting leave to appeal, the Supreme Court vacated this Court's previous opinion and remanded the case back to this Court for "reconsideration in light of *S Dakota v Wayfair, Inc*, ___ US ___; 138 S Ct 2080, 2099; 201 L Ed 2d 403 (2018), which overruled *Quill Corp v North Dakota ex rel Heitkamp*, 504 US 298; 112 S Ct 1904; 119 L Ed 2d 91 (1992)." *Apex Laboratories Int'l, Inc v Detroit*, 503 Mich 1034; 927 NW2d 243 (2019).  We permitted the parties to file supplemental briefs on remand.[2]  We now reconsider the instant case as our

---

[1] *Apex Laboratories Int'l, Inc v Detroit*, unpublished opinion per curiam of the Michigan Court of Appeals, issued May 17, 2018 (Docket No. 338218).  The facts of the case are provided in that opinion; for brevity's sake we will not repeat them here.

[2] See *Apex Laboratories Int'l, Inc v Detroit*, order of the Michigan Court of Appeals, entered June 28, 2019 (Docket No. 338218).

Supreme Court has directed, and determine that a further remand to the Tribunal is required. We therefore vacate the decision of the Tribunal and remand for further proceedings.

## I. GENERAL LEGAL PRINCIPLES

The case before us involves the ability of a taxing entity to impose a tax on the person, property, or transaction it seeks to tax. More specifically, it concerns the ability of a taxing entity to impose an income tax on a non-resident corporation. Challenges such as Apex's implicate both the Due Process and Commerce Clauses of the United States Constitution. See US Const Am V; Const, art I, § 8, cl 3. To survive a due process challenge, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Wayfair*, ___ US at ___; quoting *Miller Brothers Co v Maryland*, 347 US 340, 344-345; 74 S Ct 535; 98 L Ed 744 (1954). A "closely related" parallel to this requirement for challenges under the Commerce Clause is that there must be a "substantial nexus" between the taxing entity and the person, property or transaction being taxed. *Wayfair*, ___ US at ___; quoting *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d (1977).

A tax on a foreign corporation "that withstands a due process challenge will not necessarily withstand a Commerce Clause challenge." *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 312; 597 NW2d 595 (1993), quoting *Quill*, 504 US at 306. The *Complete Auto* test for whether a tax is permissible under the Commerce Clause provides that the tax is constitutionally permissible as long as it (1) applies to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services the state provides. *Complete Auto*, 430 US at 279; see also *Gillette*, 198 Mich App at 313-314.

Before its decision in *Quill*, the United States Supreme Court had held that a foreign corporation that lacked a physical presence in the taxing state, but only sold products by mail order, "lacked the requisite minimum contacts with the State required by both the Due Process Clause and the Commerce Clause." *Wayfair*, ___ US at ___; citing *National Bellas Hess, Inc v Dep't of Revenue of Illinois*, 386 US 753, 754-755; 87 S Ct 1389; 18 L Ed 2d 505 (1967), overruled by *Wayfair*, ___ US at ___; 138 S Ct 2099. In other words, before *Quill*, the "physical presence rule" applied to both Due Process and Commerce Clauses challenges to taxes levied against a foreign corporation.

## A. *QUILL*

In *Quill*, the United States Supreme Court reexamined the physical presence rule in the context of a state attempting to require an out-of-state mail-order seller to collect and remit use tax on goods purchased for use within North Dakota. *Quill*, 504 US at 301. The *Quill* Court described the Due Process Clause and the Commerce Clause as "analytically distinct" despite the "closely related" language of *Complete Auto*, noting that the two Clauses "reflect different constitutional concerns" and that a state may, "consistent with the Due Process Clause, have the authority to tax a particular taxpayer, imposition of the tax may nonetheless violate the Commerce Clause." *Id*. at 305. The *Quill* Court therefore elected to treat the application of the physical presence rule differently under each Clause.

With regard to the Due Process Clause, the *Quill* Court concluded that the "definite link" and "minimum connection" between a state and a foreign corporation could be satisfied without the foreign corporation having a physical presence in the state, noting that a foreign corporation may be subject to a state's *in personam* jurisdiction without the requirement of a physical presence in the state if it "purposefully avails itself of the benefits of an economic market in the forum State." *Id*. at 307, citing *Burger King Corp v Rudzewicz*, 471 US 462; 105 S Ct 2174; 85 L Ed 2d 528 (1985). The *Quill* Court therefore concluded that

> [t]he requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State. Thus, to the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process. [*Id*. at 308.]

However, with regard to challenges brought under the Commerce Clause, the *Quill* Court opted to retain the physical presence requirement for a finding of a "substantial nexus," rejecting North Dakota's contention that if "a mail-order house that lacks a physical presence in the taxing State nonetheless satisfies the due process 'minimum contacts' test, then that corporation also meets the Commerce Clause 'substantial nexus' test." *Id*. at 312. The *Quill* Court reasoned that, in contrast to the Due Process Clause's concern with "fairness for the individual defendant," the Commerce Clause and the substantial nexus requirement were informed by "structural concerns about the effects of state regulation on the national economy." *Id*. at 313. The *Quill* Court found that the bright-line physical presence rule of *Bellas Hess* furthered the goal of avoiding undue burdens on interstate commerce by creating a "discrete realms of commercial activity that is free from interstate taxation." *Id*. at 315. While the *Quill* Court noted that the *Bellas Hess* rule "appears artificial at its edges" it concluded that "[t]his artificiality is more than offset by the benefits of a clear rule" such as clearly establishing the "boundaries of legitimate state authority" to impose taxes, encouraging "settle expectations" and "foster[ing] investment by businesses and individuals. *Id*. at 315-316. The *Quill* Court therefore declined to overrule the physical presence rule of *Bellas Hess* in the context of challenges to taxation of foreign corporations brought under the Commerce Clause. *Id*. at 318.

B. *WAYFAIR*

In *Wayfair*, the United States Supreme Court considered the constitutionality of a South Dakota Act providing for the collection of sales taxes from certain remote sellers who lacked a physical presence in South Dakota. *Wayfair*, ___ US at ___, 138 S Ct at 2092. Justice Kennedy, writing for the majority and joined by Justices Thomas, Ginsburg, Alito, and Gorsuch,[3] reviewed

---

[3] Although Chief Justice Roberts authored a dissenting opinion joined by Justices Breyer, Sotomayor, and Kagan, the dissent agreed that "*Bellas Hess* was wrongly decided, for many of the reasons given by the Court." *Wayfair*, ___ US at ___; 138 S Ct at 2101 (ROBERTS, C.J., dissenting). The dissenting Justices would have adhered to the doctrine of *stare decisis* and left it to Congress to decide the "important question of current economic policy" implicated by the case. *Id*. at ___; 138 S Ct at 2101 (ROBERTS, C.J., dissenting).

the development of Commerce Clause jurisprudence through *Quill*, found that the physical presence rule did not reflect the "economic reality" of 21st century internet sellers, and resulted in "significant revenue losses to the States." *Id*. at ___, 138 S Ct at 2092. The Court in *Wayfair* concluded that

> *Quill* is flawed on its own terms. First, the physical presence rule is not a necessary interpretation of the requirement that a state tax must be "applied to an activity with a substantial nexus with the taxing State." *Complete Auto*, 430 US, at 279, 97 S Ct 1076. Second, *Quill* creates rather than resolves market distortions. And third, *Quill* imposes the sort of arbitrary, formalistic distinction that the Court's modern Commerce Clause precedents disavow. [*Id*. at ___, 138 S Ct at 2092.]

Unlike in *Quill*, the Court in *Wayfair* did not believe that the different standards of the Due Process and Commerce Clauses compelled a different result when analyzing the physical presence rule, stating that "[t]he reasons given in *Quill* for rejecting the physical presence rule for due process purposes apply as well to the question whether physical presence is a requisite for an out-of-state seller's liability to remit sales taxes. Physical presence is not necessary to create a substantial nexus." *Id*. at ___, 138 S Ct at 2093. The Court in *Wayfair* noted that its Commerce Clause jurisprudence had generally "eschewed formalism" and moved toward a "case-by-case analysis of purposes and effects," while the physical presence rule of *Quill* treated "economically identical actors differently, and for arbitrary reasons." *Id*. at ___, 138 S Ct at 2093. The Court in *Wayfair* reasoned that the artificial nature of the physical presence rule had only grown more apparent since *Quill* was decided in light of the dramatic growth of "modern e-commerce" that can utilize "targeted advertising," "instant access to most consumers via any internet-enabled device," and "a virtual showroom . . . with greater opportunities for consumer and seller interaction than might be possible for local stores." *Id*. at ___, 138 S Ct at 2095. In the face of these economic realities, the *Wayfair* Court concluded that it "should not maintain a rule that ignores these substantial virtual connections to the State." *Id*. at 2095.[4]

The *Wayfair* Court overruled *Quill* and *Bellas Hess*. *Id*. at ___, 138 S Ct at 2099. In the absence of the physical presence rule, the Court in *Wayfair* stated that "the first prong of the *Complete Auto* test simply asks whether the tax applies to an activity with a substantial nexus with the taxing State." *Id*. at ___; 138 S Ct at 2099, citing *Complete Auto*, 430 US, at 279. A substantial nexus is established when a foreign seller 'avails itself of the substantial privilege of carrying on business' in that jurisdiction." *Id*., citing *Polar Tankers, Inc v City of Valdez*, 557 U.S. 1, 11, 129 S Ct 2277, 174 L.Ed.2d 1 (2009).

---

[4] The Court in *Wayfair* further concluded that *stare decisis* did not bar reconsideration of *Quill* and *Bellas Hess*. See *Wayfair*, ___ US at ___-___; 138 S Ct 2096-2099.

## II. ANALYSIS

We conclude that, under the circumstances of this case, remand is required for the Tribunal to address the impact of *Wayfair* and the overruling of *Quill* and *Bellas Hess*, and, if necessary, to address Apex's alternative arguments. As we noted in our previous opinion, the parties and the Tribunal "did not specifically address the application of the Due Process or Commerce Clauses to Detroit's assessment of income tax to Apex; nonetheless, the majority of the parties' arguments, and the Tribunal's decision, centered on whether Apex had a "nexus" with Detroit such that the assessment of income tax against it was constitutionally valid."[5] The Tribunal, in reaching its decision, repeatedly stated that it based its holding on Apex's lack of physical presence in Detroit, stating, for example: "Plainly, there must be some physical presence established in order for [Apex] to be subjected to tax" and "[Detroit] must show 'some minimum connection' or physical presence . . ." and "[b]oth parties agree that physical presence is a key component in establishing nexus[.]" The parties and the Tribunal relied on as persuasive the definition of "physical presence" found in the Michigan Income Tax Act, MCL 206.621(2)(b); however, the Tribunal's analysis of Apex's physical presence was based on the applicability of the physical presence rule in *Quill* to the question before it. And the Tribunal's ultimate conclusion that Apex lacked a "nexus" with Detroit at least suggests that the conclusion was based on Commerce Clause analysis.

We believe that the most prudent course of action is to vacate the Tribunal's decision and to remand for further proceedings to allow the parties to focus their arguments concerning *Wayfair*, *Quill*, and the Due Process and Commerce Clauses, and to allow the Tribunal to make a ruling in the first instance. We are an error-correcting Court, see *W.A. Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 181; 909 NW2d 38 (2017), vacated in part on other grounds ___ Mich ___ (2019), and our review of Tribunal decisions is constitutionally and precedentially limited in many respects. See *Briggs Tax Svc, LLC v Detroit Public Schools*, 485 Mich 69, 75; 780 NW2d 753 (2010). Therefore, while we can determine from the existing record that the Tribunal's previous decision was based on "adoption of a wrong principle" in light of the United States Supreme Court's repudiation of *Quill*, *Bellas Hess*, and the physical presence rule, see *Briggs Tax Svc*, 485 Mich at 75, we conclude that we are not compelled by *Wayfair* or our Supreme Court's order to *reverse* the Tribunal so as hold that Apex *does* owe the challenged taxes, nor do we believe that it to be appropriate for us to do so. This is especially true because the Tribunal declined to consider several alternative arguments from Apex in the event that the Tribunal were to resolve the constitutional question in Detroit's favor. Although the parties did discuss these arguments in their supplemental briefs, we do not believe we are the appropriate forum for these arguments to be initially decided. See *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 430-431; 852 NW2d 650 (2014) (declining to reach issues on appeal that the Tribunal did not address below and noting that this Court had "neither the benefit of a decision by the . . . Tax Tribunal nor sufficient briefing by the parties.").

---

[5] See *Apex*, unpub op at 4.

We therefore vacate the Tribunal's decision and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause